

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE SEP 0 3 2015

Madsen C.J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on Sept 3, 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 90751-0 |
| Petitioner, | ) | |
| v. | ) | |
| ANTOINE LAMONT BROCK, | ) | |
| Respondent. | ) | Filed SEP 0 3 2015 |

JOHNSON, J.—This case involves whether under Washington State Constitution article I, section 7, an officer may search an arrestee's backpack as a search incident to arrest when the arrestee was wearing the backpack at the moment that he was stopped by police, but not at the time he was arrested several minutes later. When Officer Erik Olson stopped and seized Antoine Brock, he had Brock remove the backpack he was wearing and placed it where Brock could not readily access it. After a period of questioning, the officer arrested Brock and then searched the backpack. As long as 10 minutes may have lapsed between the time Olson separated Brock from his backpack and the arrest. The trial court denied Brock's motion to suppress the evidence taken from the backpack. The Court of Appeals reversed. *State v. Brock*, 182 Wn. App. 680, 330 P.3d 236 (2014), *review*

*granted*, 181 Wn.2d 1029, 340 P.3d 228 (2015). Under the facts of this case, we hold that the backpack was a part of Brock's person at the time of arrest and reverse the Court of Appeals, upholding the search as a valid search incident to arrest.

## FACTS

Early in the morning, at approximately 3 a.m. on May 21, 2008, Officer Olson was patrolling Golden Gardens Park when he noticed the men's restroom door was open and the lights were on. The park was closed and had been since 11:30 p.m. As he approached the men's room, the officer could see a person's legs inside the stall. Officer Olson waited approximately 10 minutes before Brock emerged, wearing baggy clothing and carrying a backpack.

Olson identified himself as an officer and informed Brock that he was not allowed in the park. Although Olson had probable cause to arrest Brock for trespass at that moment, he did not. Instead, he had Brock remove his backpack and performed a *Terry*[1] stop and frisk. Olson did not feel a wallet during the frisk. Brock explained that he did not have any identification but provided Olson with a name, Dorien Halley, and a corresponding birthdate and Social Security number.

Olson directed Brock to follow him to his patrol truck so he could run his name through the Washington database. For safety purposes, Olson carried the

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

backpack and placed it on the passenger seat of his vehicle while Brock stood 12 to 15 feet away on the curb. Olson reminded Brock he was not under arrest at that time but that he was also not yet free to go.

Brock indicated that he had a California license instead of a Washington license, so Olson ran the name through both the Washington and California databases. Neither search yielded any results. At that point, Olson read Brock his *Miranda*[2] rights and arrested Brock for providing false information but explained to Brock that "he wasn't necessarily going to jail." Verbatim Report of Proceedings (June 13, 2011) at 56. Because Brock had been cooperative, Olson did not use handcuffs and instructed Brock just to remain near the curb while he returned to his truck to search the backpack for identification. Olson considered the backpack search "a search of Brock's person incident to arrest" for providing false information.

In searching the backpack, Olson discovered a wallet containing two small "baggies" of what appeared to be marijuana and methamphetamine. He also found a Department of Corrections (DOC) inmate identification card displaying Brock's photograph and identifying him as Antoine L. Brock. Olson walked back over to Brock, handcuffed him, and put him in the back of his patrol truck. Olson

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

estimated that the entire encounter, from the time of the initial contact to the time he handcuffed Brock, was about 10 minutes.

Olson then ran Brock's real name through the database and discovered that Brock had a DOC felony arrest warrant. Once Washington State Patrol confirmed the warrant, Olson had no choice but to take Brock to jail. Before doing so, Olson emptied the contents of the backpack in what he considered an inventory search prior to taking Brock to jail for booking. Olson explained that for safety reasons, he could not bring the backpack to the jail without first performing a search of the arrestee's personal effects for weapons or explosives. In his search, Olson discovered numerous checks, credit cards, mail, and more baggies possibly containing narcotics.

Based on this evidence, the State charged Brock with 10 counts of identity theft in the second degree, 3 counts of forgery, and violation of the Uniform Controlled Substances Act, chapter 69.50 RCW. Brock moved to suppress the evidence discovered in his backpack, which the trial court denied, concluding that the search was a valid search incident to arrest. Brock agreed to a stipulated facts bench trial and was found guilty on all counts except on one count of identity theft.

Brock appealed, challenging the trial court's suppression ruling under article I, section 7 of the Washington State Constitution. The State responded that the

search was a valid search of Brock's person.[3] The Court of Appeals reversed

Brock's conviction, agreeing with Brock that it was not a valid search of his person

under article I, section 7 because Brock did not have actual, exclusive possession

of the backpack "immediately preceding" arrest. *Brock*, 182 Wn. App. at 689.

## ANALYSIS

Article I, section 7 of the Washington State Constitution provides for broad

privacy protections for individuals and generally prohibits unreasonable police

invasions into personal affairs. We presume that a warrantless search of an

individual's personal item, such as a backpack, violates these protections unless the

search falls within "one of the few 'carefully drawn and jealously guarded

exceptions.'" *State v. Byrd*, 178 Wn.2d 611, 616, 310 P.3d 793 (2013) (quoting

*State v. Bravo Ortega*, 177 Wn.2d 116, 122, 297 P.3d 57 (2013)). One such

exception is a search incident to arrest, in which the arresting officer has authority

to search the arrestee's person and his or her personal effects.

There are two discrete types of searches incident to arrest: (1) a search of the

arrestee's person (including those personal effects immediately associated with his

or her person—such as purses, backpacks, or even luggage) and (2) a search of the

area within the arrestee's immediate control. A valid search of the latter requires a

---

[3] On appeal before the Court of Appeals, the State also argued in the alternative that the backpack search was a valid inventory search. The State abandoned that argument on appeal before this court.

justification grounded in either officer safety or evidence preservation—there must be some articulable concern that the arrestee can access the item in order to draw a weapon or destroy evidence. *Byrd*, 178 Wn.2d at 617 (citing *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969)). The former search does not; in analyzing the search of an arrestee, we utilize the United States Supreme Court's rationale from Fourth Amendment that "'a search may be made of the *person* of the arrestee by virtue of the lawful arrest.'" *Byrd*, 178 Wn.2d at 617 (quoting *United States v. Robinson*, 414 U.S. 218, 224, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973)). In such cases, we presume that safety and evidence justifications exist when taking those personal items into custody as part of the arrestee's person.

The distinction as to whether a particular personal item constitutes part of the arrestee's person, as opposed to just part of the surrounding area, turns on whether the arrestee had "actual and exclusive possession at or immediately preceding the time of arrest." *Byrd*, 178 Wn.2d at 623. This is known as the "time of arrest" rule. We have previously applied this rule in cases involving an arrestee who was holding the personal item at the precise moment of arrest. But here, because Brock was separated from his backpack several minutes prior to arrest, the issue involves the scope of "immediately preceding arrest."

In *Byrd*, we analyzed this "time of arrest" distinction between items that are part of the arrestee's "person" and items merely within the arrestee's immediate

control. *Byrd* involved the validity of a warrantless search of a car passenger's purse. At the time of arrest, Byrd held the purse in her lap, but when ordered to step out of the car, she asked to leave the purse in the car. The officers refused and seized her purse as part of the arrest. The purse was removed and searched separate from her person. We recognized that her physical distance from the bag dispelled any practical concerns that she could have reached the purse to draw a weapon or destroy evidence, but we upheld the search as a search of her "person." Unlike items in the immediately surrounding area, the officer does not need to articulate any objective safety or evidence preservation concerns before validly searching the item. We said that the officer's authority to search the purse flowed "from the authority of [the] custodial arrest itself." *Byrd*, 178 Wn.2d at 618 (citing *Robinson*, 414 U.S. at 232). This authority satisfies article I, section 7's requirement that the incursions into private affairs be supported by "'authority of law.'" *Byrd*, 178 Wn.2d at 618. The arrest provides the constitutional authority of law justifying the search.

A second underlying justification for this "part of the person" distinction is that there are presumptive safety and evidence preservation concerns associated with police taking custody of those personal items immediately associated with the arrestee, which will necessarily travel with the arrestee to jail. We said:

> The time of arrest rule reflects the practical reality that a search of the arrestee's "person" to remove weapons and secure evidence must include more than his literal person. . . . When police take an arrestee into custody, they also take posse of his clothing and personal effects, any of which could contain weapons and evidence.

*Byrd*, 178 Wn.2d at 621.

Brock conflates the "time of arrest" distinction by arguing that his physical separation from the backpack vitiated any practical safety or evidence preservation concerns associated with the backpack because he could not reach it, and that the United States Supreme Court's ruling in *Gant* and our ruling in *Valdez* require that safety and evidence preservation concerns justify the search incident to arrest.[4] However, as we recognized in *Byrd*, neither of the decisions in *Gant* or *Valdez* restrict the lawful search of an arrestee's person; there is no requirement that the arrestee be within the reach of the personal item once it is seized as part of the lawful arrest. We rejected Byrd's argument that her inability to access her purse affects the analysis.

We applied this same analysis in *State v. MacDicken*, 179 Wn.2d 936, 938-39, 319 P.3d 31 (2014), where we upheld the validity of a search of the arrestee's

---

[4] *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009) (abrogating *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981) and narrowing the scope of the search of a vehicle incident to arrest exception); *State v. Valdez*, 167 Wn.2d 761, 776, 224 P.3d 751 (2009) (holding that the "search incident to arrest exception, born of the common law, arises from the necessity to provide for officer safety and the preservation of evidence of the crime of arrest, and the application and scope of that exception must be so grounded and so limited").

luggage, even when the luggage was moved a full car length's away from the arrestee's reach. When the personal item is taken into custody as a part of the arrestee's person, the arrestee's ability to reach the item during the arrest and search becomes irrelevant.

Rather, the safety and evidence preservation exigencies that justify this "time of arrest" distinction stem from the safety concerns associated with the officer having to secure those articles of clothing, purses, backpacks, and even luggage, that will travel with the arrestee into custody. Because those items are part of the person, we recognize the practical reality that the officer seizes those items during the arrest. From that custodial authority flows the officer's authority to search for weapons, contraband, and destructible evidence.

In determining the scope of the phrase "immediately preceding," the Court of Appeals focused on the temporal component—the time between Brock's exclusive possession and his arrest—and determined that he did not possess the backpack "immediately" before arrest because it sat in the patrol truck for nearly 10 minutes before Brock was arrested. The court distinguished these facts from other Washington cases where the arrestee's belongings were separated from the arrestee for a shorter period of time prior to the arrest. *State v. Smith*, 119 Wn.2d

675, 835 P.2d 1025 (1992);[5] *State v. Ellison*, 172 Wn. App. 710, 291 P.3d 921 (2013), *review denied*, 180 Wn.2d 1014, 327 P.3d 55 (2014).

In *Smith*, the arrestee's fanny pack fell from his person when he ran from the officer. The officer managed to catch and arrest Smith and secure him in handcuffs in her patrol car. The officer then walked back to retrieve the fanny pack and cleaned up strewn bottles around the scene. The officer returned to the patrol car, radioed in that she had custody of Smith, and searched the fanny pack approximately 9 to 17 minutes after the arrest. We held that the subsequent search of the fanny pack was a valid search incident to arrest because the fanny pack was worn by the arrestee moments before arrest and was therefore part of his seized person. We held that a 17-minute delay is also reasonable "where the delay results solely from the officer's reasonable actions designed to secure the premises and protect herself and the public." *Smith*, 119 Wn.2d at 683.

In *Ellison*, officers responded to a 911 report of an unwanted, violent ex-boyfriend who refused to leave the caller's yard. When the officers searched her yard, they found the suspect, Ellison, hiding under a mound of blankets covering the patio furniture. He was sitting in a chair with a backpack between his feet. The officer ordered him out of the chair and to lie on the ground on his stomach. The

---

[5] *Smith* was abrogated by *Byrd*, 178 Wn.2d 611, but only as to its claim to establish a broader rule; we upheld our initial decision that the arrestee's fanny pack was an article of his person at the time of arrest. *Byrd*, 178 Wn.2d 622-23.

officer then handcuffed Ellison, questioned him, and ran Ellison's name through the warrant search system. Once it was confirmed that Ellison had numerous outstanding arrest warrants, he was formally placed under arrest. Although the court did not discuss the precise duration, it is quite possible that Ellison was dispossessed of his backpack several minutes before arrest while the officers ran his name and information through their system. The Court of Appeals upheld the search as a valid search incident to arrest, acknowledging that the officers were reasonably concerned that the backpack might contain a live firearm and that "leaving it at the scene or transporting it to jail in the trunk of their patrol car presented an unacceptable safety risk." *Ellison*, 172 Wn. App. at 722.

The reviewing courts did not identify the exact duration, but it appears that in both cases at least a few minutes elapsed between separation and arrest. In this case, the Court of Appeals found the difference between a few minutes and approximately 10 minutes dispositive. In so holding, the court reiterated that the search incident to arrest exception is narrow and that 10 minutes simply cannot similarly be considered "immediately preceding" arrest.

The Court of Appeals' analysis misapprehends the purpose of the time of arrest rule. Although we must draw these exceptions to the warrant requirement narrowly, we do not draw them arbitrarily; the exception must track its underlying justification. Because the search incident to arrest rule recognizes the practicalities

of an officer having to secure and transport personal items as part of the arrestee's person, we draw the line of "immediately preceding" with that focus. The proper inquiry is whether possession so immediately precedes arrest that the item is still functionally a part of the arrestee's person. Put simply, personal items that will go to jail with the arrestee are considered in the arrestee's "possession" and are within the scope of the officer's authority to search.

Under these circumstances, the lapse of time had little practical effect on Brock's relationship to his backpack. Brock wore the backpack at the very moment he was stopped by Officer Olson. The arrest process began the moment Officer Olson told Brock that although he was not under arrest, he was also not free to leave. The officer himself removed the backpack from Brock as a part of his investigation. And, having no other place to safely stow it, Brock would have to bring the backpack along with him into custody. Once the arrest process had begun, the passage of time prior to the arrest did not render it any less a part of Brock's arrested person.

We hold that when the officer removes the item from the arrestee's person during a lawful *Terry* stop and the *Terry* stop ripens into a lawful arrest, the passage of time does not negate the authority of law justifying the search incident

to arrest. We reverse the Court of Appeals.

WE CONCUR:

No. 90751-0

GORDON McCLOUD, J. (dissenting)—In *State v. Byrd*, 178 Wn.2d 611, 623, 310 P.3d 793 (2013), this court held that law enforcement must constrain their search of an arrestee's person, incident to arrest, to only "those personal articles in the arrestee's actual and exclusive possession at or immediately preceding the time of arrest." This case requires us to interpret the phrase "immediately preceding the time of arrest" in order to determine the scope of the search incident to arrest exception to the warrant requirement.

The majority holds that the exception authorizes the search of a backpack that the arresting officer reduced to his exclusive possession and control several minutes before he initiated any custodial arrest. Because this holding is inconsistent with the principles underlying the narrow search incident to arrest exception, I respectfully dissent.

1

Under art. I, § 7 of the Washington State Constitution, a warrantless search is per se unreasonable, subject to a few "carefully drawn and jealously guarded exceptions to the warrant requirement." *State v. Bravo Ortega*, 177 Wn.2d 116, 122, 297 P.3d 57 (2013) (citing *State v. Afana*, 169 Wn.2d 169, 176-77, 233 P.3d 879 (2010); *State v. Patton*, 167 Wn.2d 379, 386, 219 P.3d 651 (2009)). The search incident to arrest is one such exception. *Byrd*, 178 Wn.2d at 616.

In *Byrd*, this court reasoned that the search incident to arrest exception encompassed two distinct applications: a search of the area within the control of the arrestee and a search of the arrestee's person. *Id.* at 617 (quoting *United States v. Robinson*, 414 U.S. 218, 224, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973)). The *Byrd* court recognized that searches of an area incident to arrest must be supported by concerns that the arrestee could endanger officer safety or destroy evidence. *Id.* (citing *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969)). But it held that searches of an arrestee's *person* require nothing more than a valid custodial arrest and that risks to officer safety and evidence preservation are *presumed* when an officer searches an arrestee's "person." *Id.* at 619-20 (citing *Robinson*, 414 U.S. at 224).

To determine whether an article is considered part of an arrestee's person and thus per se searchable incident to arrest, this court applies the "time of arrest" rule.

2

*Byrd*, 178 Wn.2d at 620-21. According to this rule, "an article is 'immediately associated' with the arrestee's person, and can [therefore] be searched under *Robinson*" if it is "a personal article[] in the arrestee's actual and exclusive possession *at or immediately preceding* the time of arrest." *Id.* at 621, 623 (emphasis added).

In this case, the majority cites two justifications for the "time of arrest" rule, both of which the majority sees as reasons to approve the search at issue here. First, the majority argues that under *Robinson*, 414 U.S. at 224, a custodial arrest so diminishes the arrestee's expectations of privacy that the arrest itself—absent any specifically articulated safety or evidence preservation concerns—"provides the constitutional authority of law justifying the search." Majority at 7. Second, the majority argues that safety and evidence preservation concerns are always associated with any item that an officer must transport with the arrestee to the jail. *Id.* Neither of these arguments persuades me that we should expand our "time of arrest" rule to encompass the search at issue in this case.

The majority's second argument—that an object always poses a danger when it must be transported to the jail—stems from a misreading of the United States Supreme Court's decision in *United States v. Edwards*, 415 U.S. 800, 806, 94 S. Ct. 1234, 39 L. Ed. 2d 771 (1974). In *Byrd*, the majority cited *Edwards* for the

3

proposition that "[w]hen police take an arrestee into custody, they also take possession of his clothing and personal effects, any of which could contain [a] weapon[]." 178 Wn.2d 621 (citing *Edwards*, 415 U.S. at 806). In this case, the majority cites that part of *Byrd* for the proposition that "there are presumptive safety and evidence preservation concerns associated with . . . items . . . [that] will . . . travel with the arrestee to jail." Majority at 7-8 (quoting *Byrd*, 178 Wn.2d at 621). But *Edwards* was not a search incident to arrest case. On the contrary, *Edwards* held that law enforcement could search an arrestee's belongings several hours *after* they were transported to the place of detention. 415 U.S. at 801 ("The question here is whether the Fourth Amendment should be extended to exclude from evidence certain clothing taken from respondent Edwards while he was in custody at the city jail *approximately 10 hours after his arrest*." (emphasis added)). In fact, *Edwards* contradicts rather than supports the assertion that it is inherently dangerous to transport items before they are searched.

The majority's other justification for the "time of arrest rule"—the diminution of the arrestee's privacy expectations—stems from this court's exceedingly broad interpretation of *Robinson*. As I explained in my dissent to *State v. MacDicken*, the same presumptions govern a search under *Chimel* and a search under *Robinson*: the presumptions that an arrestee may be armed and may destroy evidence. 179 Wn.2d

4

936, 945, 319 P.3d 31 (2014). *Robinson* held that these presumptions apply in every custodial arrest, even where it is highly unlikely that the arrestee *in fact* possesses either arms or destructible evidence. *Id.* at 945; *Riley v. California*, __ U.S. __, 134 S. Ct. 2473, 2483-84, 189 L. Ed. 2d 430 (2014). Thus, under *Robinson*, officers may presume that a particular arrestee—even one arrested for a nonviolent traffic offense—is armed. 414 U.S. at 235. But officers may *not* presume that this arrestee can access items safely reduced to law enforcement's exclusive possession and control—that is an entirely different presumption, which the Supreme Court has never approved. *See United States v. Chadwick*, 433 U.S. 1, 15, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977) ("Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest."), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565, 111, S. Ct. 1982, 114 L. Ed. 2d 619 (1991)).

It is true that some courts have applied *Robinson* to searches of personal items larger than the crumpled cigarette package at issue in that case—for example, to the "billfold and address book[,] . . . wallet[,] . . . [and] purse" recently noted by the United States Supreme Court in *Riley*—when these items were "*carried* by [the]

arrestee." 134 S. Ct. at 2488 (emphasis added) (citing *United States v. Carrion*, 809 F.2d 1120, 1123, 1128 (5th Cir. 1987); *United States v. Watson*, 669 F.2d 1374, 1383-84 (11th Cir. 1982); *United States v. Lee*, 163 U.S. App. D.C. 330, 501 F.2d 890, 892 (1974)). But the Supreme Court has always described *Robinson* searches— that is, searches of *the person* incident to arrest—in extremely narrow terms. *E.g.*, *id.* at 2489 (describing *Robinson* as permitting a search "of an arrestee's pockets," and leaving open the question of what other "physical items" might be searchable under this exception). And it has always described those searches as "'based upon the need to disarm and to discover evidence,'" even as it has explained that the validity of a *Robinson* search "'does not depend on . . . the probability in a particular arrest situation that weapons or evidence would in fact be found.'" *Id.* at 2483 (quoting *Robinson*, 414 U.S. at 235).

This court, by contrast, has incrementally expanded the search incident to arrest exception—in one line of cases[1]—so that it no longer bears any logical relationship to the safety and evidence preservation concerns that underlie both *Robinson* and *Chimel*. In *Byrd*, the majority concluded that the defendant's purse was an extension of her person, even after officers had reduced the purse to their

---

[1] This court has taken the opposite approach in recent cases addressing vehicle searches incident to arrest. See discussion of *State v. Valdez*, 167 Wn.2d 761, 224 P.3d 751 (2009), *infra* at pages 9-10, note 4.

exclusive possession and control, solely because "[t]he purse left Byrd's hands only after her arrest." 178 Wn.2d at 623-24. Subsequently, in *MacDicken*, this court reasoned that arresting officers could search the defendant's laptop bag and rolling duffel bag, both of which were least a car's length away from the defendant when officers began the search, because the defendant was holding the bags when the officers initiated the arrest. 179 Wn.2d at 939. In the present case, the majority holds that an officer may search a backpack that he reduced to his exclusive possession and control several minutes *before* he initiated the arrest.[2] Majority at 2-

---

[2] For purposes of this analysis, I assume that Brock was under arrest when Officer Olson (1) read him his *Miranda* [*v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)] warnings but (2) did not place him in handcuffs and (3) told him that he was not necessarily going to jail. *See* majority at 3. But I note that it is questionable whether this detention actually rose to the level of a full custodial arrest. *See State v. Rivard*, 131 Wn.2d 63, 76, 929 P.2d 413 (1997) (finding no arrest occurred where defendant was asked to not leave but was "not physically apprehended, restrained, handcuffed, placed in the police vehicle, nor driven to the police station"). A custodial arrest is a prerequisite to any search incident to arrest. *State v. O'Neill*, 148 Wn.2d 564, 585, 62 P.3d 489 (2003) ("probable cause for a custodial arrest is not enough[; t]here must be an actual custodial arrest to provide the 'authority' of law justifying a warrantless search incident to arrest under article I, section 7"). Thus, for purposes of the search incident to arrest exception, the earliest possible "time of arrest" in this case was the moment at which Officer Olson read Brock his *Miranda* rights.

In most of its analysis, the majority appears to agree. *See* majority at 1 ("After a period of questioning, the officer arrested Brock and then searched the backpack."), 6 ("because Brock was separated from his backpack several minutes prior to arrest, the issue involves the scope of 'immediately preceding arrest'"). But the majority also refers to something it calls "[t]he arrest *process*" and asserts that this process "began the moment Officer Olson told Brock that although he was not under arrest, he was also not free to leave." *Id.* at 12 (emphasis added). To the extent that the majority thereby implies that a

7

3. Although the backpack posed no conceivable risk to officer safety or evidence preservation, the majority holds that the search was proper because, under *Robinson*, exigencies are presumed. *Id.* at 6, 12.

In addition to misunderstanding the presumption approved in *Robinson*, this holding is contrary to two principles governing the search incident to arrest exception.

The first principle is that "the proper scope of the time of arrest rule is narrow, . . . [because a search incident to arrest is a] *'jealously guarded exception* to the warrant requirement." *Byrd*, 178 Wn.2d at 623 (citing *Bravo Ortega*, 177 Wn.2d at 122 (emphasis added)). Thus, we have explained that, under article I, section 7 (as opposed to the Fourth Amendment to the United States Constitution), "when a search can be delayed to obtain a warrant without running afoul of [officer safety and evidence preservation] concerns . . . , *the warrant must be obtained*." *State v. Valdez*, 167 Wn.2d 761, 777, 224 P.3d 751 (2009) (emphasis added). Because exigencies are presumed in a search incident to arrest, the exception already amounts to a departure from this court's general disapproval of searches lacking

---

custodial arrest is *not* a prerequisite to a search incident to arrest, this is contrary to established precedent. *O'Neill*, 148 Wn.2d at 586-87.

8

individualized suspicion.[3] Nevertheless, this court's recent cases on the exception

have eschewed any conceivable limiting principle.[4]

The second principle is that a warrantless search incident to arrest is

permissible under *Robinson* only where "'the degree to which it intrudes upon an

individual's privacy [is outweighed by] . . . the degree to which it is needed for the

promotion of *legitimate governmental interests*.'" *Riley*, 134 S. Ct. at 2484

(emphasis added) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300, 119 S. Ct.

1297, 143 L. Ed. 2d 408 (1999)). As the United States Supreme Court recently

explained, "[This] balancing of interests supported the [limited] search incident to

arrest exception in *Robinson*," *id.*, but "[n]ot every search 'is acceptable solely

because a person is in custody,'" *id.* at 2488 (quoting *Maryland v. King*, ___ U.S. ___,

---

[3] *See State v. Jorden*, 160 Wn.2d 121, 127, 156 P.3d 893 (2007) ("[T]his court has consistently expressed displeasure with random and suspicionless searches . . . ."); *City of Seattle v. Mesiani*, 110 Wn.2d 454, 458 n.1, 755 P.2d 775 (1988) (holding a random sobriety checkpoint program invalid under art. I, § 7 because it lacked individualized suspicion).

[4] This is particularly troubling in light of the fact that this court has repeatedly cautioned against the incremental expansion of exceptions to the warrant requirement, lest the exceptions "swallow what our constitution enshrines." *State v. Day*, 161 Wn.2d 889, 894, 168 P.3d 1265 (2007); *see, e.g., State v. Tibbles*, 169 Wn.2d 364, 372, 236 P.3d 885 (2010); *State v. Garvin*, 166 Wn.2d 242, 255, 207 P.3d 1266 (2009). In *State v. Valdez*, this court acknowledged that the search incident to arrest exception has been particularly susceptible to judicial expansion. 167 Wn.2d at 773-74. In the context of a vehicle search, *Valdez* expressly rejected a justification similar to the one embraced by the majority in this case: that the fact of a custodial arrest itself justifies a search in all cases. *Id.* at 777 (citing *State v. Stroud*, 106 Wn.2d 144, 175, 720 P.2d 436 (1986) (Durham, J., concurring)).

133 S. Ct. 1958, 1979, 186 L. Ed. 2d 1 (2013)). Instead, "when 'privacy-related concerns are weighty enough' a 'search may require a warrant, notwithstanding the diminished expectations of privacy of the arrestee.'" *Id.*[5] In today's holding, the majority declines to perform any balancing at all, opting instead for "a mechanical application of *Robinson*," *id.* at 2484. It thereby avoids the question of whether there was any possibility, during either search, that Brock could have accessed the backpack. When there is no such possibility, and where there is no showing that transporting the bag poses any risk to officer safety, the search does not serve any "'legitimate governmental interests,'" *id.* at 2484 (quoting *Houghton*, 526 U.S. at 300), and the balance tips in favor of privacy.

In this case, the arresting officer did not articulate any safety or evidence preservation concerns to justify either search of Brock's backpack. Clerk's Papers (CP) at 63 (trial court's findings of fact and conclusions of law) ("the backpack was

---

[5] Thus, for example, law enforcement must obtain a warrant to search luggage seized incident to arrest when that luggage poses no conceivable danger to officer safety or evidence preservation. *Chadwick*, 433 U.S. at 15-16; *see also Riley*, 134 S. Ct. at 2485 (cell phones generally not subject to search incident to arrest since privacy interest in cell phone's contents outweighs government's interest in searching phone incident to arrest); *Illinois v. Lafayette*, 462 U.S. 640, 645, 103 S. Ct. 2605, 77 L. Ed. 2d 65 (1983) (reasoning that "the interests supporting a search incident to arrest would hardly justify disrobing an arrestee on the street . . . "); *Chimel*, 395 U.S. at 767 n.12 ("[W]e can see no reason why, simply because some interference with an individual's privacy and freedom of movement has lawfully taken place, further intrusions should automatically be allowed despite the absence of a warrant that the Fourth Amendment would otherwise require.").

not within the defendant's reach; it was in the control of the officer and the officer articulated neither an officer safety reason for searching the backpack nor an evidence destruction justification for doing so"). Indeed, Officer Olson specifically testified that when he performed the first search of the backpack, Brock was too far away to access it. And when Officer Olson conducted the second search, Brock was confined to "a Plastiglas cage [sic] inside [the officer's] patrol vehicle." Verbatim Report of Proceedings (June 14, 2011) at 7. After listening to all the testimony, the trial court concluded that "[t]he officer clearly believed he could search the backpack because the defendant was under arrest, period." *Id.* at 10.

Because the majority embraces this expansive view of the search incident to arrest exception—the view that an officer may search an arrestee's personal effects "because the [arrestee] was under arrest, period"—I respectfully dissent. In keeping with the narrow scope of the search incident to arrest exception, I would construe the phrase "at or immediately preceding the time of arrest," *Byrd*, 178 Wn.2d at 623, to encompass only those personal items that the arrestee possessed and controlled between the initiation and conclusion of a full custodial arrest.

Not all arrests are resolved instantaneously, as in *State v. Smith*, where a police officer chased after and tackled the defendant before she could arrest him. 119 Wn.2d 675, 677, 835 P.2d 1025 (1992); *see State v. Patton*, 167 Wn.2d 379, 384-85,

11

388, 219 P.3d 351 (2009) (finding that the defendant was under arrest from the moment that law enforcement announced their intent to arrest him, even though defendant fled from law enforcement and was therefore not immediately secured in custody). After the officer arrested the defendant in *Smith*, she collected and searched a fanny pack that had fallen from the defendant's body during the struggle. 119 Wn.2d at 677. This court reasoned that the defendant "was in actual physical possession of the fanny pack just prior to the arrest" and held that the pack was therefore validly searched incident to arrest. *Id.* at 682. Under the rule I would adopt in today's case, the search of the fanny pack in *Smith* would be a lawful search incident to arrest because the defendant actually possessed the pack when the arrest was initiated, even though he lost possession while he attempted to evade the arresting officer. *Id.* All of the searches in the cases cited by the majority would be upheld as proper searches incident to arrest under my proposed rule.[6]

Rather than adopting this narrow rule, the majority holds that officers may conduct a warrantless search of any item seized from an arrestee during a *Terry*[7] stop

---

[6] *MacDicken*, 179 Wn.2d at 942 (items searched were in defendant's possession at the time that officers initiated the arrest); *Byrd*, 178 Wn.2d at 614 (defendant's purse was in her lap at the time she was arrested); *State v. Ellison*, 172 Wn. App. 710, 718, 291 P.3d 921 (2013) (defendant was in "possession and control" of a backpack at his feet at the time of his arrest), *review denied*, 180 Wn.2d 1014, 327 P.3d 55 (2014).

[7] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

that matures into a full custodial arrest. Majority at 12-13. In other words, the majority interprets the phrase "at or immediately preceding the time of arrest," *Byrd*, 178 Wn.2d at 623, to mean "at or immediately preceding the time of a *Terry* stop that ripens into an arrest." In essence, it announces a new exception to the warrant requirement: the search incident to a *Terry* stop.

This holding ignores the strict limitations imposed on law enforcement during a *Terry* stop,[8] confuses the justifications for a *Terry* frisk with the justifications for a search incident to arrest,[9] and conflicts with our precedent holding that a full

---

[8] *See also Minnesota v. Dickerson*, 508 U.S. 366, 373, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993) ("A [*Terry* frisk] . . . must be strictly 'limited to what is necessary for the discovery of weapons.'" (quoting *Terry*, 392 U.S. at 26)); *Florida v. Royer*, 460 U.S. 491, 499, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983) ("*Terry* and its progeny . . . created only limited exceptions to the general rule that seizures of the person require probable cause to arrest."); *Ybarra v. Illinois*, 444 U.S. 85, 93-94, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979) ("Nothing in *Terry* can be understood to allow a generalized 'cursory search for weapons' or, indeed, any search whatever for anything but weapons."); *Dunaway v. New York*, 442 U.S. 200, 210, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979) ("the [*Terry* court] approve[d] [the] narrowly defined less intrusive seizure on grounds less rigorous than probable cause, but only for the purpose of a pat-down for weapons"); *Sibron v. New York*, 392 U.S. 40, 65, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968) ("The search for weapons approved in Terry consisted solely of a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault.").

[9] *See State v. Kennedy*, 107 Wn.2d 1, 12, 726 P.2d 445 (1986) ("In contrast to an arrest, a *Terry* stop does not present the same dangers to the police officer or to evidence of a crime. . . . [R]aising the stakes of a *Terry* stop would necessarily increase the volatility in that police-citizen encounter."); *compare Terry*, 392 U.S. at 29 ("The sole justification of the [Terry] search . . . is the protection of the police officers and others nearby . . . ."), *with Robinson*, 414 U.S. at 234 ("The justification . . . for the authority to search incident to a lawful arrest rests quite as much on the need to disarm the suspect in order to take him into custody as it does on the need to preserve evidence on his person for later use at trial.").

13

custodial arrest is a prerequisite to any search incident to arrest.[10]  I fear the majority's new rule will only invite further expansions of our "narrow" and "'jealously guarded' exception to the warrant requirement." *Byrd*, 178 Wn.2d at 623 (citing *Bravo Ortega*, 177 Wn.2d at 122).

For these reasons, I respectfully dissent.

---

[10] *O'Neill*, 148 Wn.2d at 586-87 (custodial arrest is a prerequisite to search incident to arrest even where officer has probable cause to arrest before conducting the search).

_____
Gordon McCloud, J.