# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 78002-6-I |
| Respondent, | |
| v. | DIVISION ONE |
| BREANNA THORNE, | UNPUBLISHED OPINION |
| Appellant. | FILED: July 29, 2019 |

APPELWICK, C.J. — An officer may search personal articles in an arrestee's actual and exclusive possession at or immediately preceding the time of arrest. Immediately before the officer arrested Thorne, she was holding her purse in her lap or in her hands. The officer searched Thorne's purse incident to her arrest. The trial court denied Thorne's motion to suppress, finding that this was a valid search incident to arrest. We affirm, but remand to the trial court to strike the filing and DNA fees.

## FACTS

On May 11, 2016, around 1:00 a.m., Breanna Thorne drove to the Quil Ceda Creek Casino and parked in the parking lot. While patrolling the lot, Police Officer Paul Zoller saw an Acura and decided to check if it was stolen by running the license plate. Zoller discovered that the car's registered owner, Thorne, had an outstanding warrant for her arrest. The officer saw that there was a woman in the driver's seat of the car, exited his patrol car, and walked to the driver's side of the

Acura. Zoller asked the woman for her identification. The woman gave the officer an identification card from her purse. After confirming that the woman was Thorne, Officer Zoller asked her to step out of the car.

Zoller testified that Thorne had her purse on her lap, and that he "grabbed her by the wrist" and "put the purse down on the ground" before putting Thorne in handcuffs. Initially, Thorne testified that, when the officer asked her to step out of the car, her purse was on the front passenger seat. She then clarified that she picked up the purse from the passenger seat when the officer asked for her identification. Then, as she was stepping out of the vehicle, Thorne testified that her purse "was still in my hand -- my lap at that point. I stepped out of the vehicle, and I didn't know where to put my purse. He told me to set it down on the ground."

After the purse was on the ground, Officer Zoller handcuffed Thorne and walked her to the front of his patrol car. There was some conversation before Zoller searched Thorne's person incident to arrest. Zoller placed Thorne in his car. He then picked up Thorne's purse from the ground, walked back with it to his patrol car, and placed it on the hood of his vehicle. While searching the purse, Zoller found plastic bags with suspected drugs.[1] He read Thorne her Miranda[2] rights.

The State charged Thorne with one count of possession of a controlled substance, methamphetamine, and one count of possession of a controlled substance, heroin. Thorne moved to suppress the evidence found in the search

---

[1] Lab tests later confirmed that bags from Thorne's purse contained heroin and methamphetamine.

[2] Miranda v. Arizona, 384 U.S. 436, 478-79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

of the purse. The court denied the motion to suppress the evidence. A jury found Thorne guilty on both counts. Thorne appeals.

## DISCUSSION

Thorne argues that the trial court erred in denying her motion to suppress the evidence.[3] She asserts that the purse was not "so associated with [her] at the time of her arrest to be considered part of her person for . . . determining the scope of [Zoller's] authority to search incident to arrest."

### I. Standard of Review

We review findings of fact related to a motion to suppress under the substantial evidence standard. State v. Scherf, 192 Wn.2d 350, 370, 429 P.3d 776 (2018). "'Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the finding.'" Id. (quoting State v. Levy, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006)). Unchallenged findings of fact entered following a suppression hearing are verities on appeal. Id. We review the trial court's conclusions of law de novo. Id.

### II. Search Incident to Arrest

Generally, a warrantless search is prohibited by the Fourth Amendment of the United States Constitution and article I, section 7 of the Washington Constitution. State v. Garvin, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). There are a few "'jealously and carefully drawn exceptions'" to the warrant requirement.

---

[3] Thorne also argues that, under State v. Ramirez, 191 Wn.2d 732, 426 P. 3d 714 (2018), the filing fee and DNA (deoxyribonucleic acid) fee the trial court imposed at sentencing should be stricken. The State concedes that this court should remand this case to the trial court to strike the filing fee and DNA fee. We remand for the trial court to remove the filing and DNA fees.

Id. at 249-50 (quoting State v. Duncan, 146 Wn.2d 166, 171, 43 P.3d 513 2002)). The State bears a heavy burden to show the search falls within one of the narrowly drawn exceptions. Id. at 250.

One exception to the warrant requirement is a search incident to arrest. State v. Brock, 184 Wn.2d 148, 154, 355 P.3d 1118 (2015). There are two analytically distinct concepts encompassed by this exception. State v. Byrd, 178 Wn.2d 611, 617, 310 P.3d 793 (2013). The first of these propositions is that a search may be made of the area within the control of the arrestee. Id. The search must be justified by concern that the arrestee could access the article to obtain a weapon or destroy evidence. Id. The parties agree that this rationale is not present in this case.

Under the second proposition, a search may be made of the person of the arrestee by virtue of the lawful arrest. 178 Wn.2d at 617. The authority to search an arrestee's person and personal effects flows from the authority of a custodial arrest itself. Id. at 618. Under the "time of arrest rule," an article is immediately associated with the arrestee's person and can be searched under Robinson,[4] if the arrestee has actual possession of it at the time of a lawful custodial arrest. Id. at 621.

In Byrd, at the time of the defendant's arrest, she was sitting in a car's front passenger seat with her purse in her lap. Id. at 615. Before removing Byrd from the car, the officer seized the purse and set it on the ground nearby. Id. The officer

---

[4] United States v. Robinson, 414 U.S. 218, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973).

4

placed Byrd in a patrol car and returned to search the purse. Id. The trial court held that the officer's search was unlawful and granted Byrd's motion to suppress. Id. Our State Supreme Court cautioned that the proper scope of the time of arrest rule "does not extend to all articles in an arrestee's constructive possession, but only those personal articles in the arrestee's actual and exclusive possession at or immediately preceding the time of arrest." Id. at 623. Nevertheless, observing that the purse "left Byrd's hands only after her arrest, when [the officer] momentarily set it aside," the court held that it was "unquestionably an article 'immediately associated' with her person." Id. at 623-24. It concluded that the search of her purse was lawful. Id. at 625.

In Brock, the defendant was carrying a backpack, which the police officer had him remove, before performing a Terry[5] stop and frisk. 184 Wn.2d at 151. The officer directed Brock to follow him to his patrol truck so he could run his name through the Washington database. Id. For safety purposes, the officer carried the backpack and placed it on the passenger seat of his vehicle while Brock stood 12 to 15 feet away. Id. at 152. After discovering that Brock was providing false information, the officer arrested him and searched the backpack. Id. This court determined that Brock did not possess the backpack "immediately" before the arrest, because it sat in the patrol truck for nearly 10 minutes before Brock was arrested. Id. at 157.

---

[5] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

On review, the State Supreme Court stated,

> The proper inquiry is whether possession so immediately precedes arrest that the item is still functionally a part of the arrestee's person. Put simply, personal items that will go to jail with the arrestee are considered in the arrestee's "possession" and are within the scope of the officer's authority to search.

Id. at 158.

Reasoning that "the lapse of time had little practical effect on Brock's relationship to his backpack," the court held that it was part of Brock's person at the time of his arrest, justifying the search. Id. at 159.

Thorne points to the Brock court's language explaining that one "underlying justification" for the search is that there are safety and evidence preservation concerns associated with these items that "will necessarily travel with the arrestee to jail." Id. at 155. She asserts,

> [Zoller] never considered Thorne's purse a personal item so associated with her person that it would go with her to jail. Indeed, he suggested to Thorne just the opposite — that her purse obviously would not be transported with her. After [Zoller] removed the baggies of evidence, he in fact placed Thorne's purse back in her car. Hence, under Brock this was not a personal item that was fairly considered to be part of her person.

The Brock court made clear first that, as in Byrd, "[T]he officer does not need to articulate any objective safety or evidence preservation concerns before validly searching the item" within the arrestee's control at the time of arrest. 184 Wn.2d at 155. The court reiterated that the officer's authority to search the item flows from the authority of the arrest itself. Id. Then, the court explained a "second underlying justification" on which Thorne relies—the safety and evidence preservation concerns for items accompanying the arrestee to jail. Id. (emphasis

added). Thorne's reliance on the "second justification" is misplaced. An officer has authority to search the items within the arrestee's control at the time of arrest. No further justification is necessary.

In Byrd, the court rejected a similar argument:

> Byrd's assertion that "[a]bsent the forced removal" her purse was "associated with the vehicle" either overlooks the time of arrest rule or asks us to tacitly overrule it. . . . Byrd cites no authority for the claim that she could have shed the purse after being placed under arrest, and her proposed rule has no limits. If an officer cannot prevent an arrestee from leaving her purse in a car, what of other personal articles, such as an arrestee's jacket, a "baggie" of drugs, or a concealed firearm? We reject Byrd's claim and hold that if [the officer] had authority to seize Byrd and place her under custodial arrest, he also had authority to seize articles of her person, including her clothing and purse that were in her possession at the time of arrest.

178 Wn.2d at 624 (citation omitted) (first alteration in original). In other words, the Byrd court held that the rule could not be avoided merely because an item could be left behind in the car. The same reasoning applies here. Although the officer actually did leave Thorne's purse in her car after he arrest, Thorne could have taken it to jail, as it was on her person when she was arrested. The officer's decision to leave the purse in Thorne's car as a courtesy does not affect his authority to search the purse incident to arrest.

The facts here are very similar to those in Byrd. When Officer Zoller asked Thorne to step out of her car, she was holding the purse. Either she or the officer placed the purse on the ground before she was handcuffed. The trial court found, "It was disputed whether the defendant's purse, during her initial contact with the officer while she was seated in the Acura, prior to her exiting the vehicle and

placing it on the ground where she was arrested, was on her lap or on the seat next to her." Thorne argues that it is material that the purse may have been on the seat next to her when she was "detained."

But, as the trial court reasoned, whether or not it was in her lap or immediately next to her on the passenger seat, the purse was in sufficient proximity to be considered in her possession. It is undisputed that the purse was either in her lap or in her hands when the officer asked her to step out of the car, before putting her in handcuffs. Because Thorne's purse was on her lap or in her hands at the time of her arrest, it was an article of her person and within the scope of the search incident to arrest.

We affirm, but remand to the trial court to strike the filing and DNA fees.

WE CONCUR: