# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

               Appellant,

       v.

DOMINIQUE NATHANIEL BURDICK,

               Respondent.

DIVISION ONE

No. 79910-0-I

UNPUBLISHED OPINION

DWYER, J. — Dominique Burdick was charged with possession of a controlled substance and with criminal impersonation. After a jury trial, he was convicted on the first count. After a posttrial hearing on Burdick's motion to suppress evidence of the substance in question, the trial court granted his motion and vacated his conviction. The State appeals, asserting that the motion to suppress should not have been granted because the evidence was obtained in a valid search incident to Burdick's arrest. Finding no error, we affirm.

I

At about 5:45 a.m. on January 4, 2019, Swinomish Tribal Police Officer David Schwahn received a report of a vehicle prowl in the Swinomish Casino parking lot. The same day, at 5:00 p.m., Schwahn received a message that the suspected perpetrator of the vehicle prowl had returned to the casino but had left after refusing to identify himself to casino security personnel. Schwahn arrived at the casino parking lot at about 5:10 and saw Dominique Burdick walking away

from the casino with a black backpack on his shoulder. Another Swinomish Tribal police officer, Aaron Nelson, was in his own vehicle in the casino parking lot at the time and observed Schwahn entering the parking lot. Because Burdick's appearance matched the description of the suspect provided by casino security, Schwahn approached him on foot and initiated a conversation. Nelson then approached Burdick and stood behind him, opposite Schwahn. Burdick's mother was standing nearby.

Burdick told Schwahn that he had been expelled from the casino because he lacked identification. When Schwahn asked for Burdick's name, Burdick stated that his name was "Deon S. Thonmas" and that his date of birth was April 8, 1997. Schwahn asked Nelson to run this name in a police database. At some point, Burdick asked Schwahn for permission to hand his backpack to his mother, a request that Schwahn refused.

Subsequently, the officers told Burdick that he was being detained but not arrested. Burdick was then escorted into the patrol vehicle while his backpack was placed in the vehicle's trunk. Nelson drove this vehicle to the rear of the casino while Schwahn entered the casino to review security camera footage of the alleged vehicle prowl.

After viewing the video, Schwahn concluded that probable cause existed to arrest Burdick. At 5:39 p.m., Schwahn informed Burdick that he was under arrest.[1] The officers searched Burdick and his backpack incident to this arrest

---

[1] As Officer Schwahn explained at trial, Swinomish Tribal police officers are "cross-commission[ed]," meaning they have investigatory authority over non-enrolled subjects both within and outside the boundaries of the Swinomish Reservation. See RCW 10.92.020.

and, while searching the backpack, discovered a copy of an identification card containing Burdick's true name and birthdate. The officers also found drug paraphernalia along with a substance that they believed to be heroin.

Ultimately, Burdick was not charged with vehicle prowling. He was charged with possession of a controlled substance and with criminal impersonation. The case proceeded to a jury trial. Because no laboratory results were available, prior to trial, to confirm that the substance found in Burdick's backpack was heroin, Burdick did not move to suppress this evidence until the day his trial commenced—March 11, 2019.[2] For judicial and jury efficiency reasons, the parties and trial court agreed that a hearing on the suppression motion would be held *after* the trial, *if* the jury convicted Burdick.

At the close of the State's case, the trial court granted Burdick's motion to dismiss the charge of criminal impersonation. The jury convicted Burdick of possession of a controlled substance.

At the posttrial suppression hearing, the trial court addressed the issues of whether the officers had probable cause to arrest Burdick and whether the search of Burdick's backpack, incident to his arrest, was lawful. The court concluded that Burdick was "validly detained pursuant to an articulable suspicion and validly arrested pursuant to Probable Cause that he committed a vehicle prowl." However, the court granted Burdick's motion to suppress on the basis that "[t]here was a place to safely stow the pack and it did not have to go along with him into custody." Thus, the trial court ordered suppression of evidence of

---

[2] By that time, the necessary laboratory results had been obtained by the prosecution.

the heroin found in the backpack, vacated the jury's verdict, and dismissed the case. The State appeals.

II

The dispositive issue, on Burdick's suppression motion and on appeal, is whether the police officers' search of Burdick's backpack incident to his arrest was lawful. The State avers that the search was a valid search incident to Burdick's lawful arrest. Burdick disagrees, averring that the backpack was in his possession at the time he was arrested only because Officer Schwahn decided that it would be. Burdick's view, accepted by the superior court, is both meritorious and supported by controlling case authority.

In reviewing a trial court's decision on a motion to suppress, we determine whether the trial court's findings of fact are supported by substantial evidence. State v. Garvin, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Evidence is substantial when it is sufficient to persuade a fair-minded, rational person of the truth of the finding. State v. Levy, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006). Conclusions of law from an order pertaining to the suppression of evidence are reviewed de novo. State v. Duncan, 146 Wn.2d 166, 171, 43 P.3d 513 (2002).

There are two types of searches incident to arrest: "(1) a search of the arrestee's person (including those personal effects immediately associated with his or her person—such as purses, backpacks, or even luggage) and (2) a search of the area within the arrestee's immediate control." State v. Brock, 184 Wn.2d 148, 154, 355 P.3d 1118 (2015). "A valid search of the latter requires justification grounded in either officer safety or evidence preservation—there

must be some articulable concern that the arrestee can access the item in order to draw a weapon or destroy evidence." Brock, 184 Wn.2d at 154 (citing State v. Byrd, 178 Wn.2d 611, 617, 310 P.3d 793 (2013)). In contrast, a search of the arrestee's person "presumes exigencies and is justified as part of the arrest." State v. MacDicken, 179 Wn.2d 936, 941, 319 P.3d 31 (2014) (citing Byrd, 178 Wn.2d at 618). This case involves a search of the arrestee's person.

Two cases control the resolution of this dispute: State v. Brock, 184 Wn.2d 148, and State v. Alexander, 10 Wn. App. 2d 682, 449 P.3d 1070 (2019), review denied, 458 P.3d 785 (2020). We first discuss Brock. Therein, a police officer was patrolling a city park after hours when he noticed that a men's restroom door was open, with the lights on inside, and discerned a person's legs within a bathroom stall. Brock, 184 Wn.2d at 151. The officer waited about 10 minutes before that person, Brock, emerged, carrying a backpack. Id. The officer identified himself, had Brock remove his backpack, and initiated a Terry[3] stop and frisk. Id. He also asked for Brock's name; Brock provided a false one. Id. For safety reasons, the officer took Brock's backpack to his vehicle and placed it on the passenger seat. Id. at 152.

After the officer determined that Brock had falsely identified himself, the officer arrested Brock for providing false information. Id. Because Brock was otherwise cooperative, the officer did not use handcuffs. Instead, he instructed Brock to remain near the curb while the officer returned to his vehicle and searched the backpack. Id. at 151-52. A search of the backpack yielded a wallet

---

[3] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

containing what appeared to be marijuana and methamphetamine as well as a Department of Corrections inmate identification card with Brock's photograph and true name. Id. at 152. At this point, the officer handcuffed Brock and escorted him into the back of the police vehicle. Id.

The officer then ran Brock's name through a state database and discovered that Brock had an outstanding felony arrest warrant. Id. After confirming the warrant's validity, the officer "had no choice" but to take Brock to jail. Id. However, before doing so, the officer emptied the backpack's contents, discovering checks, credit cards, mail, and more suspected narcotics. Id. at 153.

Prior to his trial, Brock moved to suppress all evidence discovered during the search of his backpack; the trial court denied this motion on the basis that the search was valid as incident to his lawful arrest. Id. On appeal, we reversed the trial court, reasoning that Brock did not have actual and exclusive possession of the backpack immediately before the arrest. State v. Brock, 182 Wn. App. 680, 689, 330 P.3d 236 (2014). The Supreme Court reversed our decision, explaining that

> [b]ecause the search incident to arrest rule recognizes the practicalities of an officer having to secure and transport personal items as part of the arrestee's person, we draw the line of "immediately preceding" with that focus. The proper inquiry is whether possession so immediately precedes arrest that the item is still functionally a part of the arrestee's person. Put simply, personal items that will go to jail with the arrestee are considered in the arrestee's "possession" and are within the scope of the officer's authority to search.

Brock, 184 Wn.2d at 158.

Herein, while granting Burdick's motion to suppress, the trial court quoted

the following passage from Brock:

> Under these circumstances the lapse of time had little
> practical effect on Brock's relationship to his backpack. Brock wore
> the backpack at the very moment he was stopped by Officer Olson.
> The arrest process began the moment Officer Olson told Brock that
> although he was not under arrest, he was also not free to leave.
> The officer himself removed the backpack from Brock as a part of
> his investigation. And, *having no other place to safely stow it,*
> *would have to bring the backpack along with him into custody.*

184 Wn.2d at 159 (emphasis added).

The trial court herein then noted that Burdick's situation differed

from Brock's situation in that Burdick's backpack did not necessarily have

to travel with Burdick to jail. As the trial court stated in its memorandum

decision and again in its formal conclusions of law:

> The facts in our present case are almost identical to those in Brock
> except for one very critical difference. It is undisputed that
> Defendant Burdick's mother was present and he asked for
> permission to give the backpack to her while he was detained. This
> request was denied. There was a place to safely stow the pack
> and it did not have to go along with him into custody.

After the trial court ruled in this case, we applied the holding in Brock in

deciding State v. Alexander, 10 Wn. App. 2d 682. Alexander is controlling.

In that case, a police officer approached Heather Alexander and her

friend, Delane Slater, who were sitting in a field in disregard of posted "no

trespass" signs. The officer informed the two that they were trespassing and

obtained their identifications. Alexander, 10 Wn. App. 2d at 685. Upon obtaining

Alexander's identification, the officer found that she had an outstanding warrant

and placed her under arrest. As the officer was doing so, Slater offered to take

Alexander's backpack, which had not been on her person but which was nearby. Id. Although Alexander agreed to this, the officer did not, and informed Slater that Alexander's personal property needed to remain with Alexander at all times and would be searched incident to the arrest. Id.

After escorting Alexander into his patrol car, the officer searched the backpack, discovered suspected controlled substances, and informed Alexander that she was also under arrest for possession of a controlled substance. Id. at 685-86. Prior to trial, Alexander moved to suppress the narcotics evidence found in her backpack on the basis that it was not obtained through a valid search incident to her arrest. Id. at 686. The trial court denied the motion and Alexander was ultimately convicted of possession of the controlled substance. Id.

Alexander appealed, assigning error to the trial court's denial of her motion to suppress the evidence obtained in the search of her backpack. Relying on Brock, we reversed the conviction. Alexander, 10 Wn. App. 2d at 686.

In doing so, we first noted that the State had failed to show Alexander's actual and exclusive possession of the backpack, a necessary prerequisite to justify a valid search incident to arrest, at the time of the arrest. Id. at 692. We then noted that "the scope of a warrant exception 'must track its underlying justification'" for the warrant. Id. at 693 (quoting Brock, 184 Wn.2d at 158). We then explained that

> [t]o this end, the justification for warrantless searches of an
> arrestee's person (which require no justification beyond the validity

of the arrest)—as distinct from grab area searches (which require "some articulable concern that the arrestee can access the item in order to draw a weapon or destroy evidence")—is that "there are presumptive safety and evidence preservation concerns associated with police taking custody of those personal items *immediately associated* with the arrestee, which will *necessarily* travel with the arrestee to jail." Brock, 184 Wn.2d at 155 (emphasis added). Here, as discussed, the State failed to establish that Alexander's backpack was in her actual and exclusive possession at or immediately preceding the time of her arrest. Furthermore, Slater, about whom Officer Moss expressed no safety concerns, offered to take the backpack, and Alexander desired that Slater take it. *Under these circumstances, Alexander's backpack was not an item immediately associated with her person that would necessarily travel to jail with her. Rather, the only reason the backpack traveled to jail with Alexander was because Officer Moss decided that it would. But the scope of the arrestee's person is determined by what must necessarily travel with an arrestee to jail, not what an officer decides to take to jail.*

Alexander, 10 Wn. App. 2d at 693-94 (emphasis added).

The Supreme Court's decision in Brock, as explained by our decision in Alexander, controls today's decision. Burdick had the backpack on his person at the time of his detention solely because the police refused to allow him to hand it to his mother. Officers Schwahn and Nelson expressed no safety concerns that would have necessitated preventing Burdick's mother from assuming possession of the backpack. The backpack did not need to travel with Burdick to jail and only did so because Officer Schwahn decided that it must.[4]

---

[4] The State also likens this case to State v. Byrd, 178 Wn.2d 611. In Byrd, the defendant was riding in a vehicle when police pulled the vehicle over and arrested the driver. Byrd, the passenger, had a purse containing methamphetamine in her lap at the time of her own arrest. Byrd, 178 Wn.2d at 615. On these facts, the Supreme Court rejected Byrd's contention that the purse could have been left in the vehicle instead of coming with her to jail, reasoning that "Byrd's purse was unquestionably an article 'immediately associated' with her person" because "[t]he purse left Byrd's hands only after her arrest." Byrd, 178 Wn.2d at 623-24. As with Brock, Byrd is distinguishable from Burdick's situation, given the presence of a nondangerous third party willing to take custody of the item in dispute.

As the arresting officer did in Alexander, Officers Schwahn and Nelson decided that Burdick would continue to possess the backpack during his detention, and then decided that it would travel with Burdick to jail, by refusing to allow him to dispossess it before these events transpired. Were it not for those decisions, Burdick would not have possessed the backpack at the time of his arrest, it would not have been searched incident to his arrest, it would not have needed to travel to jail, and no evidence supporting his conviction for possession of a controlled substance would have been before the jury. The trial judge presciently anticipated the decision in State v. Alexander, 10 Wn. App. 2d 682. The judge did not err by anticipating, and correctly applying, a controlling appellate decision that had not yet been issued. The judge's ruling was exemplary.

Affirmed.

_____
Dwyer, J.

WE CONCUR:

_____ _____
Andrus, A.C.J.          Mann, C.J.