# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  49055-2-II |
| Respondent, | |
| v. | |
| STEPHANIE RAENE KEEN, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Stephanie Raene Keen appeals her bench trial conviction for unlawful possession of a controlled substance (methamphetamine) and the trial court's imposition of discretionary legal financial obligations (LFOs).  She argues that the trial court erred when it denied her motion to suppress the search of her purse and that the trial court failed to adequately inquire into her ability to pay the discretionary LFOs.[1]  We hold that the trial court did not err when it concluded that the search of Keen's purse was lawful under *State v. Brock*[2] and affirm Keen's conviction.  But we reverse the LFOs imposed and remand to the trial court for

---

[1] Keen also requests that we decline to impose appellate costs.  Under RAP 14.2, a commissioner or clerk of this court has the ability to determine whether appellate costs should be imposed based on the appellant's ability to pay and prior determinations regarding indigency.  Accordingly, a commissioner of this court will consider whether to award appellate costs if the State files a cost bill and the defendant objects to it.

[2] *State v. Brock*, 184 Wn.2d 148, 355 P.3d 1118 (2015).

1

reconsideration of discretionary LFOs consistent with our Supreme Court's opinion in *State v. Blazina*.[3]

FACTS

I. BACKGROUND FACTS[4]

On September 26, 2015, Keen called law enforcement from a gas station and reported that a man was chasing and shooting at her. Officer Tracy Murphy responded to the call. En route, Officer Murphy was advised that shortly before Keen called, a Lewis County deputy sheriff had dropped Keen off near the gas station and that she had been delusional at that time.

When Officer Murphy arrived at the gas station, the cashier told him that she had helped Keen call 911 and that Keen had then locked herself in the men's restroom. Officer Murphy knocked on the restroom door and identified himself, but Keen refused to open the locked door. When Officer Murphy tried to unlock the door, Keen held the lock shut from the inside. Officer Murphy was eventually able to unlock the door and, despite Keen's efforts, force his way into the restroom.

Once inside the restroom, Officer Murphy found Keen alone. Keen's purse was six inches away from her, between her and the wall. Officer Murphy did not observe Keen wearing the purse, but he believed the purse was hers because she was the only other person in the men's restroom.

---

[3] *State v. Blazina*, 182 Wn.2d 827, 838-39, 344 P.3d 680 (2015).

[4] The background facts are based on the trial court's unchallenged findings of fact from the CrR 3.6 hearing, which are verities on appeal. *State v. Reid*, 98 Wn. App. 152, 156, 988 P.2d 1038 (1999) (quoting *State v. Broadaway*, 133 Wn.2d 118, 131, 942 P.2d 363 (1997)).

Officer Murphy ordered Keen to the ground, handcuffed her, and arrested her for obstructing a law enforcement officer. Officer Murphy put Keen in the back seat of his patrol car and placed her water bottle and purse on top of the car's trunk. The officer then searched the purse and found a baggie containing methamphetamine.

After discovering the methamphetamine, Officer Murphy believed that Keen was under the influence of methamphetamine rather than suffering from mental health issues, and he advised Keen that she was under arrest for possession of methamphetamine. Medical aid confirmed that Keen did not need medical assistance, and Officer Murphy took her to the Lewis County Jail and booked her for unlawful possession of methamphetamine.

## II. PROCEDURE

### A. DENIAL OF MOTION TO SUPPRESS

The State charged Keen with unlawful possession of a controlled substance (methamphetamine). Keen moved to suppress the evidence found during the search of her purse.

Keen argued, inter alia, that (1) the search was not a lawful search incident to arrest because the purse was not in her actual, physical possession when she was arrested, (2) the search was not a lawful search incident to arrest because the real reason for the search was to search for evidence of a crime, and (3) the search was not a lawful "weapons frisk" because there were no specific and articulable facts supporting a reasonable belief that she was armed and dangerous. Clerk's Papers (CP) at 8-9. The State responded that the search was either a valid community caretaking search, a lawful search for weapons, or a lawful search incident to arrest.

During the suppression hearing, Officer Murphy testified that he had removed the purse from the restroom when he took Keen to his patrol car because he "assumed it was her property"

3

since she was the only one in the restroom with the purse and it was a men's restroom. Report of Proceedings (RP) (Feb. 3, 2016) at 14. He further testified that he had intended to take the purse to the jail with Keen because it was "her property." RP (Feb. 3, 2016) at 14. And he asserted that when he searched the purse he "was looking for weapons" and for her identification, which he needed "to positively identify her." RP (Feb. 3, 3016) at 14.

Officer Murphy admitted, however, that when he first arrested Keen, he had initially intended to take her to the hospital to determine whether she was having mental health issues or whether her behavior was drug related before taking her to jail. He testified,

> My plan was to transport her to the hospital for a mental health evaluation. If the mental health professional deemed that she was a danger and was going to be committed for the 72-hour hold, then she would have been referred for obstructing. If the mental health professional said no, she's fine, it's not a mental issue, it just makes sure that my case for the obstructing is going to be—you know, that won't be an issue down the road.

RP (Feb. 3, 2016) at 15. But after he found the methamphetamine in her purse and spoke to the medical aid people who had responded to the scene, he determined that he could take her straight to jail.

The trial court denied the motion to suppress and issued written findings of fact and conclusions of law. In addition to the facts set out above, the trial court found:

> 1.30    Officer Murphy searched the purse because he was going to take the purse with [Keen] to the hospital for a mental health check and then on to the jail to be booked for obstructing a law enforcement officer if she was not put on a 72-hour civil commitment hold.

CP at 23.

The trial court also entered the following conclusions of law:

2.2    Officer Murphy had probable cause to believe that [Keen] was committing the crime of obstructing a law enforcement officer (RCW 9A.76.023).

2.3    Officer Murphy's arrest of [Keen] was lawful and supported by probable cause.

2.4    The purse was in [Keen's] actual possession at the time of the arrest.

2.5    Under [*Brock*], personal items that will go to the jail with the arrested person are in the arrestee's possession.

2.6    Because the purse was in [Keen's] possession at the time of the arrest and was to be transported with [Keen] to the jail, Officer Murphy had lawful authority to search the purse incident to that arrest.

2.7    *Brock* is a change in the law, in this respect, from the prior ruling in *State v. Byrd*, 178 Wn.2d 611[, 310 P.3d 793] (2013).  *Brock* is controlling under the circumstances presented to the court in this matter.

2.8    The search of the purse was lawful and the items found, including without limitation the methamphetamine, are admissible.

CP at 24.

B.  BENCH TRIAL ON STIPULATED FACTS AND SENTENCING

Keen subsequently waived her right to a jury trial, and the case proceeded to a bench trial based on stipulated facts.  The trial court found Keen guilty as charged.

At sentencing, the State requested the following LFOs: (1) a $500 victim assessment fee, (2) a $200 criminal filing fee, (3) $1,200 in court appointed attorney fees, (4) a $1,000 fine, (5) a $100 crime lab fee, (6) a $100 DNA collection fee, and (7) $1,000 in "jail costs."  RP (May 25, 2016) at 4.  Defense counsel discussed Keen's substance abuse and possible mental health issues, noted she had been in treatment, and acknowledged that Keen had several driving while under the influence (DUI) arrests and two DUI convictions in 2016.  The trial court then directly questioned Keen about her ability to "work and earn an income."  RP (May 25, 2016) at 7.

Keen stated that she was not currently working and that she had attempted to apply for Social Security benefits but had recently decided not to pursue benefits. When the trial court asked her if she anticipated returning to work, she responded, "Absolutely." RP (May 25, 2016) at 7. Defense counsel stated that he thought Keen would be "able to pay," and requested that the trial court require $25 per month payments. RP (May 25, 2016) at 7.

The trial court sentenced Keen under the "first-time offender" waiver and found that Keen had a chemical dependency that contributed to the commission of the offense. RP (May 25, 2016) at 8. It imposed 10 days of jail time with credit for 3 days of time served, and 12 months of community custody.

The trial court also imposed a total of $2,800 in LFOs and fines. This included: (1) a $500 victim assessment fee, (2) a $200 criminal filing fee, (3) $900 in court appointed attorney fees, (4) a $1,000 fine, (5) a $100 crime lab fee, and (6) at $100 DNA collection fee. It specifically declined to impose the "jail fee" or the full amount of attorney fees that the State had requested. RP (May 25, 2016) at 9. The court set the monthly payments at $25 a month, with the payments starting 90 days from the sentencing date. On the judgment and sentence, the trial court checked the box stating that it had inquired into Keen's ability to pay the LFOs and that it had determined she had the ability to pay the LFOs.

Keen appeals her conviction and the discretionary LFOs.[5]

---

[5] Keen sought review at public expense. The trial court granted the request.

ANALYSIS

Keen argues that the trial court erred when it denied her motion to suppress and that the trial court failed to make an adequate inquiry into her ability to pay before imposing discretionary LFOs. We affirm the conviction, but we reverse the LFOs imposed and remand to the trial court for reconsideration of discretionary LFOs.

## I. DENIAL OF SUPPRESSION MOTION

Keen challenges the trial court's denial of her suppression motion. She argues that (1) substantial evidence does not support the trial court's finding of fact 1.30, (2) the trial court erred when it concluded that she had actual possession of the purse under *Brock*, and (3) the trial court erred when it concluded that the search was a lawful search under *Brock* and *Byrd*.[6] We hold that finding of fact 1.30 is supported by substantial evidence. We further hold that although the trial court erred when it concluded that Keen was in actual possession of her purse at the time of her arrest, the search of the purse was still a lawful search of Keen's person incident to arrest under *Brock* because the facts establish that she had actual possession of the purse immediately preceding her arrest.

### A. STANDARD OF REVIEW

When reviewing the trial court's denial of a CrR 3.6 suppression motion, we determine whether substantial evidence supports the challenged findings of fact and whether the findings of fact support the conclusions of law. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009).

---

[6] Keen also argues that, assuming that the search was unlawful under *Brock*, the facts did not establish issues of officer safety or destruction of evidence. Because we hold that the search was lawful under *Brock*, we do not reach this issue.

"Evidence is substantial when it is enough 'to persuade a fair-minded person of the truth of the stated premise.'" *Garvin*, 166 Wn.2d at 249 (quoting *State v. Reid*, 98 Wn. App. 152, 156, 988 P.2d 1038 (1999)). We consider unchallenged findings of fact verities on appeal. *Reid*, 98 Wn. App. at 156. We review de novo the trial court's conclusions of law pertaining to the suppression of evidence. *Garvin*, 166 Wn.2d at 249.

B. FINDING OF FACT 1.30

Keen argues that substantial evidence does not support the trial court's finding of fact 1.30, which states:

> Officer Murphy searched the purse because he was going to take the purse with [Keen] to the hospital for a mental health check and then on to the jail to be booked for obstructing a law enforcement officer if she was not put on a 72-hour civil commitment hold.

CP 23. We disagree.

Officer Murphy testified that he intended to transport the purse to the jail with Keen because "[i]t was her property." RP (Feb. 3, 2016) at 14. He also testified that (1) his initial plan was to first transport Keen to the hospital for a mental health evaluation, (2) if she was deemed to have mental health issues and was placed on a 72-hour hold, he would have referred charges to the prosecutor's office, and (3) if she was not deemed to have mental health issues, he would have taken Keen and her belongings to the jail to book her for obstructing a law enforcement officer. And he testified that he searched the purse prior to departing with Keen to ensure that there were no weapons in the purse and to locate identification. This testimony shows that Officer Murphy searched the purse because he was intending to transport it with Keen to the hospital and he needed

to ensure it was safe to transport, and there was no evidence to the contrary. This evidence supports finding of fact 1.30 and Keen's argument fails.

C. CONCLUSIONS OF LAW

Keen next argues that the trial court erred when it concluded that the purse search was a lawful search incident to arrest under *Brock* and *Byrd* because Keen was not in actual possession of the purse at, or immediately preceding, the time of her arrest. We disagree.

1. Legal Principles

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington State Constitution prohibit warrantless searches unless one of the narrow exceptions to the warrant requirement applies. *State v. Rooney*, 190 Wn. App. 653, 658, 360 P.2d 913 (2015), *review denied*, 185 Wn.2d 1032 (2016). The State has the burden of establishing by clear and convincing evidence that an exception to the warrant requirement applies. *Rooney*, 190 Wn. App. at 658-59.

One exception to the warrant requirement is a search incident to arrest. *Brock*, 184 Wn.2d at 154. There are "two analytically distinct concepts" encompassed by this exception. *Byrd*, 178 Wn.2d at 617 (citing *United States v. Robinson*, 414 U.S. 218, 224, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973)). "The first of these propositions is that 'a search may be made of the area within the control of the arrestee.'" *Byrd*, 178 Wn.2d at 617 (quoting *Robinson*, 414 U.S. at 224). "[T]he second proposition of the search incident to arrest" allows for searches "'of the person of the arrestee by virtue of the lawful arrest.'" *Byrd*, 178 Wn.2d at 617 (quoting *Robinson*, 414 U.S. at 224) (emphasis omitted).

Unlike the first proposition, a search of the person of the arrestee need not be justified by concern that the arrestee could access the article to obtain a weapon or destroy evidence. *Byrd*, 178 Wn.2d at 617-18. Instead, "searches of an arrestee's person, including articles of the person such as clothing or personal effects, require 'no additional justification' beyond the validity of custodial arrest." *Byrd*, 178 Wn.2d at 617-18 (quoting *Robinson*, 414 U.S. at 235). "The authority to search an arrestee's person and personal effects flows from the authority of a custodial arrest itself." *Byrd*, 178 Wn.2d at 618 (citing *Robinson*, 414 U.S. at 232). "Washington law has long recognized the validity of searching a defendant and the property immediately within his or her control without a warrant in the process of making an arrest." *State v. Ellison*, 172 Wn. App. 710, 719, 291 P.3d 921 (2013).

2. *Byrd* and *Brock*

In recent years, our Supreme Court applied the search of a person exception to the warrant requirement in *Byrd* and *Brock*. In *Byrd*, Byrd was arrested for possession of stolen property after a police officer confirmed that the car she was riding in had stolen license plates. *Byrd*, 178 Wn.2d at 615. At the time of her arrest, she was sitting in the front passenger seat with her purse in her lap. *Byrd*, 178 Wn.2d at 615. Before removing Byrd from the car, an officer took Byrd's purse from her lap and placed it on the ground nearby. *Byrd*, 178 Wn.2d at 615. After placing Byrd in a patrol car, the officer searched the purse and discovered methamphetamine. *Byrd*, 178 Wn.2d at 615. The trial court suppressed the evidence from the purse. *Byrd*, 178 Wn.2d at 615-616.

Our Supreme Court held that the search of a person exception extends to personal property "immediately associated" with the arrestee's person and concluded that the purse in question was immediately associated with Byrd's person at the time of arrest. *Byrd*, 178 Wn.2d at 621, 623.

10

The court noted that the exception did not apply to all "articles within the arrestee's reach but not actually in his possession." *Byrd*, 178 Wn.2d at 623. Instead, the exception applied to "only those personal articles in the arrestee's actual and exclusive possession at *or immediately preceding* the time of arrest." *Byrd*, 178 Wn.2d at 623 (emphasis added). The court limited such searches "only to articles 'in such immediate physical relation to the one arrested as to be in a fair sense a projection of his person.'" *Byrd*, 178 Wn.2d at 623 (quoting *United States v. Rabinowitz*, 339 U.S. 56, 78, 70 S. Ct. 430, 94 L. Ed. 653 (1950) (Frankfurther, dissenting), *overruled by Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969)).

More recently, in *Brock*, our Supreme Court examined the scope of the language "immediately preceding arrest." *Brock*, 184 Wn.2d at 154. In *Brock*, officers searched the backpack that Brock had been carrying when the officers approached him in a public park. *Brock*, 184 Wn.2d at 151. During their investigation, the officers took the backpack from Brock for safety purposes and put it in the passenger seat of a patrol vehicle. *Brock*, 184 Wn.2d at 151-52. After discovering that Brock was providing false information, the officers arrested him and searched the backpack. *Brock*, 184 Wn.2d at 152.

Our Supreme Court held that the backpack was part of Brock's "person" at the time of the arrest even though he was not wearing it when he was formally arrested. *Brock*, 184 Wn.2d at 158-59. In reaching this conclusion, the court noted that the underlying justification for an item being considered "part of the person" is that "there are presumptive safety and evidence preservation concerns associated with police taking custody of those personal items immediately associated with the arrestee, which will necessarily travel with the arrestee to jail." *Brock*, 184 Wn.2d at 155. The court explained:

> When the personal item is taken into custody as a part of the arrestee's person, the arrestee's ability to reach the item during the arrest and search becomes irrelevant.

> Rather, the safety and evidence preservation exigencies that justify this "time of arrest" distinction stem from the safety concerns associated with the officer having to secure those articles of clothing, purses, backpacks, and even luggage, that will travel with the arrestee into custody. Because those items are part of the person, we recognize the practical reality that the officer seizes those items during the arrest. From that custodial authority flows the officer's authority to search for weapons, contraband, and destructible evidence.

*Brock*, 184 Wn.2d at 156.

The court then further concluded that the lapse of time between Brock's actual, physical possession of the backpack and his arrest was not the determinative factor as to whether he had the backpack in his actual possession immediately preceding his arrest. *Brock*, 184 Wn.2d at 158-59. The court explained:

> Although we must draw these exceptions to the warrant requirement narrowly, we do not draw them arbitrarily; the exception must track its underlying justification. . . . [W]e draw the line of "immediately preceding" with that focus. *The proper inquiry is whether possession so immediately precedes arrest that the item is still functionally a part of the arrestee's person. Put simply, personal items that will go to jail with the arrestee are considered in the arrestee's "possession" and are within the scope of the officer's authority to search*.

*Brock*, 184 Wn.2d at 158 (emphasis added).

The court continued:

> Under these circumstances, the lapse of time had little practical effect on Brock's relationship to his backpack. . . . Once the arrest process had begun, the passage of time prior to the arrest did not render it any less a part of Brock's arrested person.

*Brock*, 184 Wn.2d at 159. Thus, *Brock* clarified that the arrestee need not be in actual, physical possession at the time of the arrest for the search of the person rule to apply and established a test

for determining whether an item was in an arrestee's actual possession immediately preceding the arrest.

    3. Valid Search Incident to Arrest

Here, the trial court concluded that the purse was in Keen's actual possession at the time of her arrest. We agree with Keen that this conclusion of law is not supported by the trial court's findings. Actual possession means having physical custody of the item in question. *State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002). At the time of her arrest, Keen was next to, but was not in physical custody of the purse. Thus, the trial court's conclusion on this issue, and any additional conclusion flowing from this conclusion, were incorrect.

But we may affirm the trial court on any ground supported by the record. *State v. Smith*, 165 Wn. App. 296, 308, 266 P.3d 250 (2011), *aff'd* 177 Wn.2d 533 (2013) (citing *State v. Costich*, 152 Wn.2d 463, 477, 98 P.3d 795 (2004)). Although the trial court erred when it concluded that Keen was in actual possession of the purse at the time of her arrest, the search would still be proper if Keen was in actual possession of the purse immediately preceding her arrest.

*Brock* requires that the possession of the personal item in question must "so immediately precede[ ] arrest that the item is still functionally a part of the arrestee's person." *Brock*, 184 Wn.2d at 158. The *Brock* court further clarified that "[p]ut simply, personal items that will go to jail with the arrestee are considered in the arrestee's 'possession' and are within the scope of the officer's authority to search." *Brock*, 184 Wn.2d at 158.

Here, there was circumstantial evidence that Keen had actually possessed the purse immediately before her arrest.[7] She was found within inches of the purse inside an otherwise empty men's restroom, where one does not normally expect to find a purse. These facts would be sufficient to allow the trial court to find that Keen brought the purse into the restroom and, thus, had been in actual possession of the purse immediately before her arrest. These facts, plus Keen's immediate proximity to the purse, support the conclusion that the purse was still functionally a part of Keen's person. Thus, the State has shown that the search was proper under *Brock*,[8] and the trial court did not err when it denied Keen's motion to suppress.

## II. LFOs

Keen further argues that the trial court erred when it imposed discretionary LFOs without first making an adequate inquiry into her ability to pay. She raises this issue for the first time on appeal.

Subject to exceptions not applicable here, we may decline to review issues raised for the first time on appeal. RAP 2.5(a). However, we may also exercise our discretion to reach *Blazina*-based challenges to discretionary LFOs for the first time on appeal. *Blazina*, 182 Wn.2d at 835. Here, we choose to exercise our discretion to review Keen's discretionary LFOs.

---

[7] To the extent Keen is arguing that the officer had to observe Keen in actual possession of the purse before the search of the person exception applies, we disagree. Although the officers in *Byrd* and *Brock* observed the arrestees in actual possession of the items later searched, neither case states that actual possession immediately before the arrest cannot also been established by circumstantial evidence. *See Brock*, 184 Wn.2d at 151-52; *Byrd*, 178 Wn.2d at 615. Nor does Keen cite to any authority requiring that the officer observe the actual possession.

[8] In light of this holding, we do not address Keen's argument that the trial court improperly "broadened" *Brock* to allow for the search of constructively possessed personal property. *See* Br. of Appellant at 19.

We review a decision to impose discretionary LFOs for an abuse of discretion. *State v. Clark*, 191 Wn. App. 369, 372, 362 P.3d 309 (2015). A trial court abuses its discretion when its decision is based on untenable grounds or untenable reasons. *Clark*, 191 Wn. App. at 372.

Before imposing discretionary LFOs, the trial court must conduct an individualized inquiry into the defendant's present and future ability to pay LFOs. RCW 10.01.160(3); *Blazina*, 182 Wn.2d at 837-38. The trial court's inquiry should consider other "important factors" such as incarceration and the defendant's other debts, including restitution. *Blazina*, 182 Wn.2d at 838. If a trial court fails to make a proper inquiry, it is basing its decision to impose LFOs on untenable grounds.

Although the trial court questioned Keen about her intent to return to work and whether she could afford to pay a small monthly amount, the trial court did little more. *Blazina* requires a more thorough inquiry. *Blazina*, 182 Wn.2d at 838. Additionally, Keen had also stated that she was not currently employed, that she had previously been seeking benefits, and that the court had previously found her indigent, circumstances also indicating the need for further inquiry. Although Keen's counsel agreed she could pay $25 a month, the trial court never inquired as to what impact this payment would have on Keen. There was nothing in the record explaining why Keen had been seeking benefits, when she had last worked, what kind of work she was able to do, how much income she expected to earn when she returned to work, the likelihood of her finding a job, her expenses, her debt load, or how her substance abuse issues and treatment might potentially impact her employability and expenses.

Under *Blazina*, the trial court's inquiry in this situation was inadequate and, thus, the trial court abused its discretion in imposing discretionary LFOs based on this record.

15

No. 49055-2-II

Accordingly, we affirm Keen's conviction, but we reverse the discretionary LFO's and remand for reconsideration of the discretionary LFOs consistent with our Supreme Court's opinion in *Blazina*.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

I concur:

BJORGEN, C.J.

MELNICK, J. (dissent) — I respectfully disagree with the majority's holding that the trial court abused its discretion by imposing discretionary legal financial obligations (LFOs) on Stephanie Raene Keen.

At Keen's sentencing hearing the State made specific recommendations to the court regarding many facets of the sentence, including LFOs. Keen also made recommendations. The court inquired about Keen's ability to pay LFOs.

Keen was currently in the third phase of a court-ordered two year intensive outpatient treatment program. The court asked her, "Is there any physical or emotional or other reason why you can't work and earn an income? Do you work?" Report of Proceedings (RP) (May 25, 2016) at 7.

Keen responded that she had been pursuing Social Security benefits but decided against it. She absolutely intended on going to back to work once this criminal case resolved itself. Keen's lawyer made the following representation to the court, "So we'd ask for—I think she's able to pay and we'd ask for $25 month." RP (May 25, 2016) at 7.

After considering all of the information, the court found Keen had the ability to work. It based this finding on Keen's statements and her attorney's representations. The court then imposed mandatory and discretionary LFOs; however, it did not impose all of the discretionary fees requested by the State.

We "review a decision on whether to impose LFOs for abuse of discretion." *State v. Clark*, 191 Wn. App. 369, 372, 362 P.3d 309 (2015). "Discretion is abused when it is exercised on untenable grounds or for untenable reasons." *Clark*, 191 Wn. App. at 372. "The trial court's factual determination concerning a defendant's resources and ability to pay is reviewed under the

'clearly erroneous' standard." *Clark*, 191 Wn. App. at 372 (quoting *State v. Bertrand*, 165 Wn. App. 393, 403-04, 267 P.3d 511 (2011)).

"A trial court abuses its discretion when its decision 'is manifestly unreasonable or based on untenable grounds or reasons.'" *Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 668-69, 230 P.3d 583 (2010) (quoting *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d (1997)). "A trial court's decision is manifestly unreasonable if it 'adopts a view that no reasonable person would take.'" *Salas*, 168 Wn.2d at 669 (quoting *In re Pers. Restraint of Duncan*, 167 Wn.2d 398, 402-03, 219 P.3d 666 (2009)). "'A decision is based on untenable grounds or for untenable reasons if the trial court applies the wrong legal standard or relies on unsupported facts.'" *Salas*, 168 Wn.2d at 669 (quoting *Duncan*, 167 Wn.2d at 402-03).

I disagree that the trial judge adopted a view that no reasonable person would take. Keen told the trial judge she could work and she would do so after this case resolved itself. Keen's lawyer affirmatively said Keen could make $25 monthly payments. In taking into account the facts, the admissions, and the statements, the trial court exercised its discretion and did not impose all of the discretionary fees the State requested. I respectfully disagree with the majority's holding that the trial court abused its discretion in imposing discretionary LFOs.

_____
MELNICK, J.

18