

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  35452-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAWN MARIE MITCHELL, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Dawn Mitchell appeals from her conviction for possession of a controlled substance, arguing that officers waited too long to search her purse after arresting her on an outstanding warrant.  We affirm.

FACTS

Ms. Mitchell was a passenger in a car stopped in Kennewick for having a defective brake light.  In conversation with the driver, the officer learned Ms. Mitchell's name.  Calling the name into dispatch, the officer was alerted to an arrest warrant from Yakima County.

The officer returned to the car and placed Ms. Mitchell under arrest. A purse sat on her lap between her legs. The officer took control of the purse. After looking inside and seeing that there were a lot of small items that might be lost if the purse was searched in the darkness at the scene, the officer decided to search the purse at the jail; he also testified that the weather was very cold. The subsequent search at the jail uncovered the presence of an oxycodone pill.

The prosecutor filed one count of possession of a controlled substance. The defense moved to suppress, arguing that the search of the purse at the jail was untimely and unauthorized. After hearing testimony, the court expressly found that the search occurred within ten minutes of the defendant's arrest and that the entire incident from traffic stop to purse search took no more than 25 minutes. Clerk's Papers (CP) at 27-28.[1] Determining that the search was not unduly delayed and was reasonable under our case law, the court denied the motion. CP at 28.

The defendant was convicted at a stipulated facts trial. After sentencing and the entry of necessary findings, Ms. Mitchell appealed to this court. A panel considered the case without hearing argument.

---

[1] The court included these temporal findings within conclusion of law no. 4. Appellate courts treat a finding of fact that was mislabeled as a conclusion of law as a finding of fact. *State v. Kilburn*, 151 Wn.2d 36, 52, 84 P.3d 1215 (2004).

ANALYSIS

The facts are not in dispute and this appeal presents as its sole issue whether the trial court erred in denying the motion to suppress the evidence obtained from the purse search. We therefore consider whether the trial court correctly applied the governing law. *State v. Brock*, 184 Wn.2d 148, 355 P.3d 1118 (2015); *State v. Byrd*, 178 Wn.2d 611, 310 P.3d 793 (2013).

In an appeal challenging a suppression hearing, this court considers the legal issue presented de novo. *State v. Acrey*, 148 Wn.2d 738, 745, 64 P.3d 594 (2003). We typically review the trial court's factual findings for substantial evidence. *State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994). In instances where, as here, there is no challenge to the factual findings, we treat them as verities on appeal. *Id*. at 644.

*Byrd* is factually similar to this case. The defendant, Ms. Byrd, was a passenger in the front seat of a car that was stopped for using stolen license plates. 178 Wn.2d at 615. She was arrested when the driver identified Ms. Byrd as the owner of the car. *Id*. At the time of the arrest, her purse was sitting on her lap. *Id*. A search of the purse at the scene uncovered methamphetamine inside a sunglasses case. *Id*.

The trial court had suppressed the evidence, ruling that the purse search was only valid if based on concerns for either officer safety or evidence preservation, neither of which was present in that instance. *Id*. This court had agreed and affirmed the trial court on the same rationale. *Id*. at 616. The Washington Supreme Court reversed, concluding

that the search of the purse was the same as the search of an arrestee's person and that there was no requirement to establish any "particularized concerns for officer safety or evidence preservation." *Id*. at 614.

The court majority considered both federal and state authority in reaching its conclusion. It first noted that a search of an arrestee's person has always been based on the need for ensuring officer safety and preventing destruction of evidence. *Id*. at 617-620. No other exigencies were needed to conduct the search. *Id*. at 620. The remaining question was whether the searched article was on the arrestee's person. *Id*. at 620-621. This question is one that needs to be distinguished from property within the arrestee's area of control but not on her person. *Id*. at 621-625. In those later circumstances, the State must be able to justify the search for reasons other than the mere fact of arrest. *Id*. at 625.

A somewhat different, although related, question was presented in *Brock*. There an officer had stopped Mr. Brock and had him remove the backpack he was wearing; the backpack was placed where Mr. Brock could not readily access it. 184 Wn.2d at 150-151. The officer questioned Brock and then arrested him. The backpack was searched incident to the arrest, which may have come as late as ten minutes after the backpack was removed from Mr. Brock's person. *Id*. at 151. The court concluded that the search of the backpack was valid incident to the arrest of Mr. Brock. *Id*.

4

Applying *Byrd*, the court concluded that the backpack on Mr. Brock at the time he was seized was properly subject to search incident to his later arrest. *Id*. at 154-159. In the course of its analysis, the court reviewed several of its previous cases in which the item searched had been in the possession of the arrestee but was later separated from him by distance or time prior to the actual search. *Id*. at 156-157 (discussing *State v. MacDicken*, 179 Wn.2d 936, 319 P.3d 31 (2014) (upholding search of luggage in control of arrestee that had been moved one car length away prior to search) and *State v. Smith*, 119 Wn.2d 675, 835 P.2d 1025 (1992) (fanny pack that fell off defendant during chase searched 17 minutes after chase and some distance from location of arrest was properly searched incident to arrest)).[2] The court determined that the lapse of time between seizure and search "had little practical effect on Brock's relationship to his backpack." *Id*. at 159. The court stated its ultimate ruling:

> Because the search incident to arrest rule recognizes the practicalities of an officer having to secure and transport personal items as part of the arrestee's person, we draw the line of "immediately preceding" with that focus. The proper inquiry is whether possession so immediately precedes arrest that the item is still functionally a part of the arrestee's person. Put simply, personal items that will go to jail with the arrestee are considered in the arrestee's "possession" and are within the scope of the officer's authority to search.

*Id*. at 158.

---

[2] The court also discussed *State v. Ellison*, 172 Wn. App. 710, 291 P.3d 921 (2013), *review denied*, 180 Wn.2d 1014 (2014) (backpack between feet of arrestee at time of arrest was lawfully searched some minutes later). *Brock*, 184 Wn.2d at 157-158.

The trial court correctly recognized that *Brock* and *Byrd* are controlling here. As in *Byrd*, Ms. Mitchell's purse was on her lap and is considered a part of her person that was subject to search due to the fact of her lawful arrest. As in *Brock*, the fact that the search occurred as long as ten minutes after her arrest does not invalidate the search. The search was within the same factual circumstances as *Byrd* and the same temporal period as *Brock*.

The only true distinction between this case and those two cases is that the search was performed at the jail instead of at the scene of the arrest. This geographic distinction does not detract from the analysis in *Brock*. As noted previously, the *Brock* court cited with approval searches that occurred at some distance from the arrestee in both *Smith* (unspecified distance from arrest, but within area of pursuit) and *MacDicken* (one car length from arrest). Hearkening back to the observation in *Brock*, the location of the search had "little practical effect" on Ms. Mitchell's relationship to her purse. *Id*. at 159.

In this instance, the last quoted sentence from *Brock* is the most telling. The purse was one of the "personal items" going to the jail with Ms. Mitchell. *Id*. at 158. The fact that it was searched at that location a brief period of time after she was arrested is a distinction without a constitutional difference.

The trial court accurately applied the governing case law and reached the unassailable conclusion that the search was proper. It therefore correctly denied the motion to suppress. The judgment is affirmed.

6

No. 35452-1-III
*State v. Mitchell*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, J.

I CONCUR:

_____
Lawrence-Berrey, C.J.

No. 35452-1-III

PENNELL, J. (concurring) — I agree with the majority opinion that the search of

Dawn Mitchell's purse was authorized as a search incident to arrest pursuant to binding

precedent. *State v. Brock*, 184 Wn.2d 148, 355 P.3d 1118 (2015); *State v. MacDicken*,

179 Wn.2d 936, 319 P.3d 31 (2014); *State v. Byrd*, 178 Wn.2d 611, 310 P.3d 793 (2013).

I write separately because I share the concern articulated by Justice Gordon McCloud in

*MacDicken* that our Supreme Court's analysis has effectively turned what is supposed to

be a narrow exception to the warrant requirement into an affirmative right of law

enforcement to conduct a search. *MacDicken*, 179 Wn.2d at 946 (Gordon McCloud, J.,

dissenting). It was not long ago that the United States Supreme Court corrected a similar

slippage from constitutional moorings in the context of vehicle searches. *Arizona v.

Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). I lament that our Court

has not followed suit in the context of a purse or similar personal item.

The search incident to arrest rule is an exception to the warrant requirement

marred by a history of "'progressive distortion.'" *State v. Ringer*, 100 Wn.2d 686, 694,

674 P.2d 1240 (1983), *overruled on other grounds by State v. Stroud*, 106 Wn.2d 144,

720 P.2d 436 (1986) (*quoting United States v. Rabinowitz*, 339 U.S. 56, 75, 70 S. Ct. 430,

94 L. Ed. 653 (1950) (Frankfurther, J., dissenting). At its core, the rule is a sensible one

that recognizes the need of law enforcement officers to work in a safe manner, guided by

readily-understood standards. *See New York v. Belton*, 453 U.S. 454, 458, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981). However, for decades, concerns for clear guidance and police safety led the federal courts (with state courts in tow) to suspend disbelief about the actual dangers faced by officers arresting recent vehicle occupants. *Gant*, 556 U.S. at 341-42; *Stroud*, 106 Wn.2d at 151-52. Our courts allowed officers to perform vehicle searches incident to the arrest of an occupant based on the theory that at the moment of initial police conduct, the arrestee could have reached into the vehicle for a weapon or to destroy evidence. *See, e.g.*, *State v. Fadebo*, 113 Wn.2d 388, 395-97, 779 P.2d 707 (1989) (arrestee could have reached into unlocked purse). Once faced with this potential for harm, the search incident to arrest rule entitled an officer to conduct a search, even if the search did not take place until after the arrested person was taken into custody and therefore no longer posed an actual risk to officer safety or destruction of evidence. *Id.* at 397; *Thornton v. United States*, 541 U.S. 615, 627, 124 S. Ct. 2127, 158 L. Ed. 2d 905 (2004) (Scalia, J., concurring).

In 2009, the United States Supreme Court reversed course and announced a realistic, restrictive approach to the vehicle search incident to arrest rule. In *Gant*, the Court recognized the search incident to arrest rule must not be guided by fictional safety concerns. Nor must it be read to create a police entitlement to search in certain circumstances. Instead, given constitutional protections against warrantless searches, *Gant* held that a vehicle search incident to arrest can pass constitutional muster only if it

2

is truly warranted by concerns for officer safety or preservation of evidence. 556 U.S. at 343. Under *Gant*, it is only when an arrestee might possibly access a weapon or evidence at the "time of the search" that law enforcement officers may look through a vehicle under the authority of a search incident to arrest. *Id*.

In the wake of *Gant*, our state Supreme Court outlined two subsets of the search incident to arrest rule: one pertaining to an arrestee's surrounding area and the other applicable to an arrestee's person. With respect to searches of an arrestee's surrounding area, such as a vehicle, our Supreme Court followed *Gant* and recognized a "time of the search" rule. *State v. Patton*, 167 Wn.2d 379, 395, 219 P.3d 651 (2009). Under this rule, police may conduct a search incident to arrest only if, at the time of the search, there is a realistic risk of destruction of evidence or a threat to police safety. *State v. Valdez*, 167 Wn.2d 761, 777, 224 P.3d 751 (2009). But when it comes to an arrestee's person, our Supreme Court has taken a different approach. Instead of looking at the dangers faced by police at the time of the search, our court has adopted a "time of arrest" rule. *Byrd*, 178 Wn.2d at 614. Under this rule, police may search all areas constituting part of the arrestee's person at the (approximate) time of arrest. *Brock*, 184 Wn.2d at 158. The time of arrest rule permits police to search a purse or bag in an arrestee's immediate and exclusive control at the time of arrest. *Id*. at 154. The search may proceed even if (as here) at the time of the search, there was no risk the arrestee could have accessed their purse and thereby posed a safety or evidentiary risk. *Id*. at 155.

3

Our Supreme Court's time of arrest rule is rooted in an inventory analysis. *Brock*, 184 Wn.2d at 154-55; *Byrd*, 178 Wn.2d at 619-20. In the abstract, this makes perfect sense. "Any weapon or evidence secreted on the person of the arrestee is always accessible," so it is crucial that law enforcement officers be able to search such areas. *Byrd*, 178 Wn.2d at 631 (Fairhuirst, J., dissenting). In addition, jails are sensitive areas. When an individual is booked into jail, the State has a legitimate interest in ensuring against the introduction of dangerous objects or other prohibited items. *See Bell v. Wolfish*, 441 U.S. 520, 559, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979); *United States v. Edwards*, 415 U.S. 800, 802-03, 94 S. Ct. 1234, 39 L. Ed. 2d 771 (1974).

But while an inventory analysis is theoretically sound, it is not clear why the analysis must extend to personal effects such as bags or purses. According to our Supreme Court, a purse or similar object must be considered part of the arrestee's person because it "will necessarily travel with the arrestee to jail." *Brock*, 184 Wn.2d at 155. But that reasoning is circular. The only reason that an arrestee's purse or bag will *necessarily* travel with the arrestee to jail is because the police have seized the purse or bag as part of an arrestee's person. As recognized by Justice Fairhurst's dissent in *Byrd*, it is not hard to imagine circumstances where an arrested person would reasonably opt to leave a purse of bag behind. *Byrd*, 178 Wn.2d at 633 (Fairhurst, J., dissenting). When an individual is arrested in a car or in the presence of friends or family, it is quite possible and reasonable for the individual to choose to leave a purse or bag behind. Given the

4

importance of the constitutional right to privacy, it would appear that an arrested person should at least be given a choice. If the choice is made to leave a purse or bag behind, then there is no danger that the purse or bag will cause a disruption in a squad car or at the jail. Under such circumstances, the generally prophylactic tenet of the search incident to arrest rule should not apply. *See Riley v. California*, __ U.S. __, 134 S. Ct. 2473, 2485-86, 189 L. Ed. 2d 430 (2014) (The search incident to arrest rule cannot extend to cell phone data since such data never poses a risk to officer safety and since cell phone can be seized pending a warrant.).

As it stands, the search incident to arrest rule crafted by our Supreme Court affords greater privacy to vehicles than purses or similar objects. Once police separate an arrested person from her or his vehicle, the fact of arrest, alone, will not justify a search. *Gant*, 556 U.S. at 335; *Valdez*, 167 Wn.2d at 778. But under *Brock*, *MacDicken* and *Byrd*, a contrary rule applies to purses and bags. Similarly, when an individual is arrested in a vehicle, our constitution requires that the police seek reasonable alternatives to impoundment prior to seizing a vehicle and conducting an inventory search. *State v. Houser*, 95 Wn.2d 143, 153, 622 P.2d 1218 (1980). But purses and bags are not afforded similar respect. When an arrested person has a purse or similar object at or near the time of arrest, our case law entitles law enforcement officers unfettered discretion over whether to conduct a search. Neither the arrestee's wishes nor any legitimate needs of law enforcement restrain this exercise of power.

Our case law's greater protections for vehicles over purses or similar objects run counter to what I perceive as general expectations of privacy. Vehicles are subject to numerous regulations. *South Dakota v. Opperman*, 428 U.S. 364, 368-69, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976). They are typically built for shared use. Their windows subject much of the interior space to public viewing. But a purse is much different. It is a closely-held, private object. *State v. Johnston*, 31 Wn. App. 889, 892, 645 P.2d 63 (1982) ("It would be difficult to define an object more inherently private than the contents of a woman's purse."). A purse is not something that is shared. Its contents are not readily observable. A purse will often contain its owner's most intimate possessions, such as medications, daily calendars, reading materials, photographs, and hygiene products. Because the contents of a purse are often quite intimate, a search of a closed purse or similar bag "is undoubtedly a severe violation of subjective expectations of privacy." *New Jersey v. T.L.O.*, 469 U.S. 325, 337-38, 105 S. Ct. 733, 83 L. Ed. 2d 720 (1985). Indeed, the fact that a vehicle is apt to contain a purse or similar object is one of the reasons the United States Supreme Court vigorously restricted the vehicle search incident to arrest rule in *Gant*. 556 U.S. at 345 (vehicle search incident to arrest is a significant intrusion because it involves an invasion of "not just the passenger compartment but every purse, briefcase or other container within that space"). Given that the presence of purses or bags heightens the privacy expectations of a vehicle, it is curious to afford purses or bags less privacy protections than vehicles.

6

At bottom, *Brock*, *MacDicken* and *Byrd* represent a construction of our constitution's privacy protections from the perspective of law enforcement. This conflicts with the fundamental assumption of our state constitution. WASH. CONST. art. I, § 1 ("[G]overnments . . . are established to protect and maintain individual rights."). Our case law must provide ample room for police officers to safely perform their public duties. Furthermore, given the fluid circumstances of a custodial arrest, the rules governing police conduct should be simple and easy to implement. *United States v. Robinson*, 414 U.S. 218, 235, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973). But when there is no realistic need for a law enforcement intrusion, the constitutional right to privacy should prevail. *See Riley*, 134 S. Ct. at 2485 (The bright line search incident to arrest rule has no application when circumstances present no risks to safety or destruction of evidence.).[1]

If writing on a blank slate, I would hold that the search incident to arrest rule only extends to a purse or similar object if it is readily accessible to the arrested person at the time of the proposed search (*see Gant*, 556 U.S. at 343; *Chimel v. California*, 395 U.S.

---

[1] *Riley* held that when a cell phone is taken into custody as a personal effect, a warrant is required prior to a search. 134 S. Ct. at 2485. *Riley* reasoned that purses or other effects that are "kept on an arrestee's person" merit less protection than cell phones. *Id*. at 2489. However, *Riley* did not discuss the practicalities of how a purse is kept on an arrestee's person or whether police officers are entitled to seize a purse that was once in the arrestee's possession so that it may be booked into custody and thereby subject to search.

752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969); *United States v. Maddox*, 614 F.3d 1046 (9th Cir. 2010)) or if the purse must be taken into custody either due to the wishes of the arrested person or because of a lack of reasonable alternatives (*see Houser*, 95 Wn.2d at 153). However, under *Brock*, *MacDicken* and *Byrd*, this is not the state of the law. Because our court lacks authority to disrupt Supreme Court precedent and because Ms. Mitchell's case presents no principled distinction from that precedent, I concur in the decision to uphold the trial court's order denying Ms. Mitchell's motion to suppress.

_____
Pennell, J.

I CONCUR:

_____
Lawrence-Berrey, C.J.