[No. 61470-9.   En Banc.   May 18, 1995.]

THE STATE OF WASHINGTON, *Petitioner*, v. DAVID R. HUNDLEY, *Respondent*.

*Nelson Hunt, Prosecuting Attorney*, and *Douglas E. Jensen, Deputy*, for petitioner.

*Williams and Johnson, P.S.*, and *Kenneth G. Johnson*, for respondent.

DURHAM, C.J. — David Hundley was convicted of possession of trace amounts of cocaine and heroin. At trial, Hundley contended the evidence was insufficient to prove the charges beyond a reasonable doubt; he also asserted an affirmative defense of unwitting possession. The Court of Appeals held the evidence was sufficient to support the conviction, but reversed based on unwitting possession. *State v. Hundley*, 72 Wn. App. 746, 866 P.2d 56 (1994). The court held the affirmative defense of unwitting possession need only create a reasonable doubt that the Defendant knowingly possessed the drugs, even though the crime of possession does not include guilty knowledge as an essential element. *Hundley*, at 750-53; *see also* RCW 69.50.401(d). Under this approach, the affirmative defense of unwitting possession need not itself be established by a preponderance of the evidence. *Hundley*, at 753.

We find the evidence insufficient to prove possession of a controlled substance beyond a reasonable doubt and, therefore, affirm the Court of Appeals' reversal of Hundley's judgment and sentence, although on different grounds. As to the affirmative defense issue, the Court of Appeals' analysis predated this court's decision in *State v. Riker*, 123 Wn.2d 351, 869 P.2d 43 (1994), and its validity is doubtful in the light of *Riker*.[1]

In 1990, Hundley was arrested as a result of a domestic violence incident. During a search incident to arrest, the officer discovered a small plastic bag in Hundley's wallet.[2]

---

[1]Since we find the evidence insufficient to support the conviction, it is not necessary to discuss *Riker's* influence on the affirmative defense of unwitting possession. Nevertheless, as *Riker* explicitly notes, "[g]enerally, an affirmative defense which does not negate an element of the crime charged, but only excuses the conduct, should be proved by a preponderance of the evidence." (Citations omitted.) *Riker*, at 368.

[2]Actually, two small bags were discovered. Only one was tested.

The bag was wrapped in a mail-order form from Mid America Drug, which bills itself as "a licensed wholesaler" of incense and legal stimulants. The bag contained 0.5 gram of indeterminate green-brown vegetable matter.

Hundley testified the material was a potpourri or incense product which he received from Mid America as an unsolicited sample in the mail. One of the technicians who tested the sample testified it "had an herbal kind of smell, a potpourri". Hundley testified he was placed on the company's mailing list after ordering products for his wife, who is asthmatic.

A battery of tests was run on the material. The field test for heroin, performed incident to the Defendant's arrest, produced a negative result. The material was then sent to the Washington State Patrol Crime Laboratory. The substance was tested for marijuana using a thin layer chromatography test (TLC), but the result was negative. Significantly, the negative TLC result was misreported in the "Crime Laboratory Report" as a positive finding for heroin and cocaine. Yet, as the technician admitted under examination, the TLC did not yield a positive result for heroin and cocaine. The technician then ran a gas chromatograph mass spectrometer (GCMS) test on the material, which indicated trace amounts of heroin and cocaine.[3]

A portion of the material was then sent by the Defendant to an independent lab. That lab ran three different color tests for heroin and cocaine. All three tests were negative. Because the State's GCMS had yielded a positive result, the Defendant arranged for a retest of the material at the independent lab using the same GCMS method and the same procedures as used by the state crime lab. The technician at the independent lab holds a doctorate in forensic science, had performed hundreds of GCMS tests, and had worked

---

[3]The GCMS can identify and detect substances down to nanograms (that is, billionths of a gram). The technician was not experienced in running this kind of test. Aside from training, this was one of the first tests he had run on actual samples submitted to the lab.

for the Portland Crime Laboratory for 9 years prior to founding his own lab. The test failed to detect either heroin or cocaine. The State could have run a confirming test on remaining material but did not.

■ The due process clause of the Fourteenth Amendment requires the State to prove beyond a reasonable doubt all facts necessary to constitute the crime charged. *In re Winship*, 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970); *State v. Acosta*, 101 Wn.2d 612, 615, 683 P.2d 1069 (1984). The State failed to prove beyond a reasonable doubt the presence of even trace amounts of a controlled substance in the vegetable matter.[4]

The Court of Appeals devoted two paragraphs to the sufficiency of the conflicting evidence. *State v. Hundley*, 72 Wn. App. 746, 749, 866 P.2d 56 (1994). The court accounted for the open contradiction between the GCMS test results by noting that drugs are often imperfectly mixed with benign materials. If so, testing one portion might reveal the presence of drugs, while testing another portion would not. *Hundley*, at 749. While this could be true, "could" is not the relevant standard. Proof beyond a reasonable doubt is the standard, and this explanation of the possibility of inconsistent results using the same methods and procedures does not itself prove anything beyond a reasonable doubt. Moreover, the "mixing" explanation would be more persuasive were the test in question incapable of detecting amounts down to the nanogram.

■ The field test, three different color tests, and a GCMS test run by an independent lab tested negative for controlled substances. Only the GCMS test run by the Washington State Patrol Crime Laboratory tested positive for trace amounts. This welter of conflicting evidence does not amount to proof beyond a reasonable doubt. "[T]he reasonable-doubt standard is indispensable, for it 'impresses on

---

[4]The vegetable matter which allegedly contained trace amounts of controlled substances was found in Mr. Hundley's wallet wrapped in a mail-order form for herbal remedies, incense and over-the-counter drugs.

the trier of fact the necessity of reaching a subjective state of certitude on the facts in issue.' " (Citation omitted.) *Winship*, 397 U.S. at 364. No reasonable trier of fact could reach subjective certitude on the fact at issue here. Mr. Hundley's conviction is reversed.

DOLLIVER, SMITH, GUY, JOHNSON, and MADSEN, JJ., and ANDERSEN, BRACHTENBACH, and UTTER, JJ. Pro Tem., concur.

Reconsideration denied July 11, 1995.