IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  50868-1-II |
| Respondent, | |
| v. | |
| LEONARD F. STEPHENS, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J.  —  Leonard F. Stephens appeals his bench trial conviction for unlawful possession of heroin.  First, Stephens argues that the State failed to present sufficient evidence to support his conviction.  Next, he argues that defense counsel provided ineffective assistance when he failed to move to suppress evidence and failed to retain an expert.  We hold that there is sufficient evidence to support his conviction and that Stephens's ineffective assistance of counsel claims fail.  Consequently, we affirm Stephens's conviction.

FACTS

I. BACKGROUND

On August 7, 2016, shortly after midnight, Pacific County Sheriff's Deputy Shawn Eastham responded to a domestic disturbance in the parking lot of a rest area.  Upon arriving at the scene, Deputy Eastham and other officers contacted Stephens and his girlfriend.  Deputy

Eastham then arrested Stephens for fourth degree domestic violence assault. Deputy Eastham testified he placed Stephens in handcuffs and read him his *Miranda*[1] rights.

Incident to his arrest, Deputy Eastham searched Stephens's person. Deputy Eastham found a pipe in Stephens's pants pocket. Deputy Eastham also searched Stephens's baseball cap. There is conflicting evidence about where the cap was when Deputy Eastham searched it. Deputy Eastham testified that Stephens was wearing the cap when he placed him into custody. Stephens testified that he was not wearing the cap when he was arrested and that he was inside the patrol vehicle when Deputy Eastham searched it. Deputy Eastham discovered folded up aluminum foil in the inner band; he opened the foil and noticed black and brown residue, which later tested positive for heroin.

The State charged Stephens with unlawful heroin possession in violation of former RCW 69.50.4013 (2015).

## II. TRIAL

At the bench[2] trial, the State presented testimony from Deputy Eastham and an expert, Debra Price. The defense presented testimony from Stephens.

### A. EASTHAM'S TESTIMONY

At trial, when asked what Stephens wore when placed in custody, Deputy Eastham responded, "Just casual clothes. He did have a hat, ball cap." Report of Proceedings (RP) at 53. He explained when searching a person incident to an arrest, he searches their clothing, which

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] Stephens waived his right to a jury trial.

includes hats. Deputy Eastham testified during cross-examination that he handcuffed and searched Stephens outside of Deputy Eastham's patrol vehicle. Deputy Eastham also testified that Stephens admitted the substance was heroin and told him he used the heroin the day before. Deputy Eastham testified that Stephens said a friend gave him the substance. Deputy Eastham also stated that Stephens admitted he used the pipe to smoke heroin.

## B. PRICE'S EXPERT TESTIMONY

Forensic scientist Price described how she tested two portions of the residue found on the foil using gas chromatography mass spectrometry (GCMS) instruments. She suspected the substance was a mixture and explained that GCMS "works well for mixtures." RP at 89. From the tests, Price confirmed the residue contained heroin.

## C. STEPHENS'S TESTIMONY

At trial, Stephens raised the affirmative defense of unwitting possession. Stephens testified he was not wearing the baseball cap when Deputy Eastham arrested him. Instead, Stephens said the cap was laying on the ground about 15 feet away from where he spoke with the officers before his arrest. However, Stephens admitted the cap belonged to him. He claimed he sat in the back of the patrol vehicle when Deputy Eastham searched the cap.

Stephens also denied that he admitted to Deputy Eastham that the residue was heroin. He said he told Deputy Eastham the substance was Rick Simpson Oil (RSO), a cannabis derivative. He stated he did not know the substance contained heroin. However, he admitted using heroin in the past about 12 to 15 years ago. He agrees that he told Deputy Eastham he received the substance from a friend. During cross-examination, Stephens also testified that he smoked the substance the day before his arrest. He stated he was wearing the cap when police arrived at the rest area.

### III. TRIAL COURT'S DECISION AND SENTENCING

The trial court ruled that the State proved beyond a reasonable doubt that Stephens possessed heroin on August 7. The trial court also ruled that Stephens did not meet his burden of proving unwitting possession by a preponderance of the evidence.

### ANALYSIS

### I. INSUFFICIENT EVIDENCE

Stephens raises several arguments that the evidence was insufficient to convict him for possession of a controlled substance. We hold that Stephens's arguments fail.

### A. PRINCIPLES OF LAW

We review challenges to the sufficiency of the evidence de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). The State has the burden of proving all of the essential elements of the crime beyond a reasonable doubt. *Rich*, 184 Wn.2d at 903. And we ask whether a rational trier of fact could find that all of the crime's essential elements were proven beyond a reasonable doubt. *Rich*, 184 Wn.2d at 903. We view the evidence in the light most favorable to the State. *Rich*, 184 Wn.2d at 903. When challenging the sufficiency of the evidence, the defendant admits the truth of the State's evidence and all reasonable inferences that arise therefrom. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017).

The State must establish two elements in a prosecution for unlawful possession: the nature of the substance and the fact of possession by the defendant. *State v. Bradshaw*, 152 Wn.2d 528, 538, 98 P.3d 1190 (2004). The State is not required to prove knowledge of possession or knowledge of the nature of the substance. *See Bradshaw*, 152 Wn.2d at 539-40. Once the State establishes the element of possession, the defendant may affirmatively assert that his possession

was unwitting. *Bradshaw*, 152 Wn.2d at 538. The defendant bears the burden of proving unwitting possession by a preponderance of the evidence. *State v. Sundberg*, 185 Wn.2d 147, 156, 370 P.3d 1 (2016).

Stephens's unwitting possession defense hinged on his credibility. In matters involving a witness's credibility, we defer to the trial court, which had the opportunity to evaluate the witness's credibility. *Cardenas-Flores*, 189 Wn.2d at 266.

### B. ARGUMENTS RAISED

First, Stephens argues that the State failed to prove he "knowingly" possessed heroin because he thought the substance was RSO and, as such, his possession was unwitting. But the State is not required to prove that Stephens knowingly possessed heroin or that Stephens knew the substance was heroin. *Bradshaw*, 152 Wn.2d at 539-40. Thus, Stephens's argument fails. Additionally, for issues of credibility, we defer to the trier of fact. *Cardenas-Flores*, 189 Wn.2d at 266. Here, the trial court found that Stephens failed to meet his burden and that his evidence was unpersuasive. Also, the trial court found that the State established beyond a reasonable doubt that Stephens possessed heroin. Thus, Stephens's argument fails.

Second, Stephens argues that under RCW 69.50.4013(4), the delivery of 3.5 grams or less of a marijuana concentrate for noncommercial purposes is legally permitted and is an exception to the controlled substance statute. While Stephens's argument may be true, this law was not in effect at the time of this incident and does not apply. Former RCW 69.50.4013(4).[3] Moreover, Stephens

---

[3] In 2017, the legislature renumbered this section and added language to it. LAWS OF 2017, ch. 317, § 15. Because of the substantive change, we rely on the version in effect when Stephens committed his crime.

does not explain how the presence of RSO undercuts the evidence that the substance also tested positive for heroin. Thus, this argument fails.

Third, Stephens argues that there is no evidence that the State tested the substance for a cannabis derivative or tested the entire substance. Price, a forensic scientist with the Washington State Patrol who tested the substance using a GCMS test, testified that the substance tested positive for heroin on two independent tests, and if it had not tested positive for heroin, the GCMS would have indicated what the sample did contain. Price further testified that the GCMS works well for substances that contain a mixture of compounds.

Stephens cites no authority that mandates the State to test a substance to prove it is not the substance the defendant alleges it is—in this case a cannabis derivative. Additionally, Stephens cites no authority that mandates the State to test the entire substance to confirm that the entire substance tests positive for a controlled substance. Thus, Stephens's argument fails.

Fourth, Stephens argues that since he raised an unwitting possession defense, the State was required to prove the substance was not a legal cannabis derivative. We disagree.

The State must prove the nature of the substance and the fact of possession, but not that the substance is not a legal cannabis derivate when Stephens raises an unwitting possession defense. *See Bradshaw*, 152 Wn.2d at 538. Instead, Stephens has to prove his defense by a preponderance of the evidence. *Sundberg*, 185 Wn.2d at 156. The trial court determined that Stephens failed to do so.

Stephens relies on *State v. Hundley*, 126 Wn.2d 418, 894 P.2d 403 (1995), to show that the "[S]tate merely established that the substance 'could' have contained trace heroin in an otherwise legal substance." Br. of Appellant at 11. The *Hundley* court held that the evidence was insufficient

to prove possession of a controlled substance beyond a reasonable doubt. 126 Wn.2d at 419. In a search incident to arrest, an officer discovered a plastic bag in Hundley's wallet containing indeterminate matter. *Hundley*, 126 Wn.2d at 419-20. The State's lab conducted multiple tests and one GCMS test indicated trace amounts of heroin and cocaine. *Hundley*, 126 Wn.2d at 420. Hundley sent the material to an independent lab. *Hundley*, 126 Wn.2d at 420. The independent lab ran four tests that came back negative for heroin and cocaine. *Hundley*, 126 Wn.2d at 420-21. Our Supreme Court held that the State failed to prove Hundley possessed a controlled substance beyond a reasonable doubt because of the "welter of conflicting evidence." *Hundley*, 126 Wn.2d at 421-22.

*Hundley* is factually distinguishable. Here, there is not a "welter of conflicting evidence" to suggest the substance was not heroin. The only tests that were conducted on the substance tested positive for heroin. Deputy Eastham also testified that Stephens admitted the substance was heroin and that Stephens admitted he had smoked heroin using the pipe the day before. This evidence viewed in the light most favorable to the State substantiates that the substance contained heroin, a controlled substance. Stephens's reliance on *Hundley* is misplaced.

We hold that sufficient evidence supports Stephens's unlawful possession of a controlled substance conviction.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Stephens argues that trial counsel provided ineffective assistance when his counsel (1) failed to move to suppress the heroin found in his cap and (2) failed to retain an expert. We hold that these arguments fail.

### A. STANDARD OF REVIEW AND GENERAL PRINCIPLES OF LAW

The claim of ineffective assistance of counsel is a mixed question of law and fact that we review de novo. *State v. Lopez*, 190 Wn.2d 104, 116-17, 410 P.3d 1117 (2018). To show that he received ineffective assistance of counsel, a defendant must show that defense counsel's conduct was deficient and that the deficient performance resulted in prejudice. *State v. Linville*, ___Wn.2d___, 423 P.3d 842, 847 (2018). Because both prongs must be met, a failure to show either prong will end our inquiry. *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018).

Defense counsel's representation is deficient if it falls "'below an objective standard of reasonableness.'" *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). There is a strong presumption that defense counsel's conduct was not deficient. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). Because of this presumption, "the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995). Performance is prejudicial if there is reasonable probability that but for the deficiency the result of the proceeding would have been different. *Grier*, 171 Wn.2d at 34.

### B. FAILURE TO MOVE TO SUPPRESS EVIDENCE

First, Stephens argues that he received ineffective assistance of counsel because his defense counsel did not move to suppress the heroin found in the search of his cap. He argues that under the Fourth Amendment of the federal constitution and article 1, section 7 of the Washington State Constitution there was no justification for the warrantless search of the cap based on officer safety or preservation of evidence. He also argues that he had a privacy interest in the folded foil and

that Deputy Eastham conducted another warrantless search of the foil itself.  We conclude that Stephens's ineffective assistance of counsel claim fails.

1.      PRINCIPLES OF LAW

When a party alleges a violation of both the Fourth Amendment and article I, section 7, we analyze the Washington State Constitution first because it is more protective.  *State v. MacDicken*, 179 Wn.2d 936, 940, 319 P.3d 31 (2014).  Article I, section 7 states, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."  WASH. CONST., art. I, § 7.  Warrantless searches violate this provision unless they fall within an exception.  *MacDicken*, 179 Wn.2d at 940.  One of these exceptions is a search incident to a lawful arrest.  *MacDicken*, 179 Wn.2d at 940.

"There are two types of warrantless searches that may be made incident to a lawful arrest."  *MacDicken*, 179 Wn.2d at 940.  First, there may be a search of the arrestee's person and second, there may be a search of the area within the arrestee's immediate control.  *MacDicken*, 179 Wn.2d at 940.

A warrantless search of the arrestee's person presumes exigencies.  *MacDicken*, 179 Wn.2d at 940-41.  It is not necessary to determine if there was justification for the search based on officer safety or evidence preservation.  *MacDicken*, 179 Wn.2d at 941.  To determine whether a personal item constitutes an arrestee's person, the courts look at whether the arrestee had "actual and exclusive possession at or immediately preceding the time of arrest."  *State v. Byrd*, 178 Wn.2d 611, 623, 310 P.3d 793 (2013).  For "'immediately preceding'" our Supreme Court has determined that "[t]he proper inquiry is whether possession so immediately precedes arrest that the item is still

functionally a part of the arrestee's person." *State v. Brock*, 184 Wn.2d 148, 158, 355 P.3d 1118 (2015).

On the other hand, warrantless searches of the area within the arrestee's immediate control "are justified by concerns of officer safety or the preservation of evidence and are limited to those areas within reaching distance at the time of the search." *MacDicken*, 179 Wn.2d at 941.

2.      SEARCH OF THE CAP

Here, at trial, Stephens testified that he was wearing the cap when the officers arrived at the rest area. However, he claims that at the time of his arrest, the cap was lying on the ground about 15 feet away. He also testified that he was sitting in the back of the patrol vehicle when Deputy Eastham searched the cap. Therefore, he argues that the search of the hat was not a search of his person incident to arrest and Deputy Eastham had no justification for the search because he "had no reason to believe the hat contained evidence of the crime of domestic violence, Stephens did not have access to the hat once arrested and there were no officer safety concerns." Br. of Appellant at 20.

On the other hand, Deputy Eastham testified that Stephens was wearing the cap at the time he was placed in custody. Deputy Eastham also testified that he handcuffed and searched Stephens outside of the patrol vehicle. The State argues that Stephens's cap was "an article in his possession at the time of his arrest" and the search was lawful. Br. of Resp't at 11. If the cap was an article in his possession at the time of or immediately preceding his arrest, exigencies are presumed and there does not need to be a determination that the search was justified by concerns of officer safety or preservation of evidence. *MacDicken*, 179 Wn.2d at 940-41.

Because Stephens did not challenge the search below, the parties did not have an opportunity to develop a record on this issue. Additionally, the trial court did not make any findings regarding whether Stephens was wearing the cap at the time of or immediately preceding the arrest. This factual determination is necessary to determine if Deputy Eastham's search of the cap was a lawful search of Stephens's person incident to arrest, which presumes exigencies, or whether Deputy Eastham searched the cap in the area within Stephens's immediate control, which requires there to be justification for the search.

To demonstrate prejudice, Stephens must show that the trial court probably would have granted a motion to suppress the heroin found in his cap. *See McFarland*, 127 Wn.2d at 337-38. Yet, the record does not show that the trial court probably would have granted a motion to suppress. Thus, Stephens's argument fails because he has not shown that he was prejudiced.

3.      SEARCH OF THE FOIL

Stephens also argues that counsel was ineffective by failing to move to suppress the heroin because Deputy Eastham conducted a separate warrantless search of the folded up foil, and Stephens claims there was no justification for this search.

As a prerequisite to claiming an unconstitutional search, a defendant must show that he has a reasonable expectation of privacy in the item searched. *State v. Hamilton*, 179 Wn. App. 870, 882, 320 P.3d 142 (2014). Stephens cites *State v. Evans*, 159 Wn.2d 402, 150 P.3d 105 (2007), to support his argument that he had an expectation of privacy in the foil because it was folded up in his hat and he did not consent to the search.

In *Evans*, our Supreme Court held that Evans had a reasonable expectation of privacy in a briefcase because (1) the briefcase was in his truck, (2) the briefcase was closed and locked, (3)

11

Evans objected to its seizure, and (4) society recognizes an expectation of privacy in briefcases. 159 Wn.2d at 409. The court also held that the exception to the warrant requirement for voluntarily abandoned property did not apply. *Evans*, 159 Wn.2d at 413.

However, *Evans* is distinguishable because any privacy interest in folded up foil is not analogous to the privacy interest a person has in a locked briefcase. Additionally, for a warrantless search of an arrestee's person incident to arrest, "[t]he time of arrest rule recognizes that the same exigencies that justify searching an arrestee prior to placing him into custody extend not just to the arrestee's clothes, however we might define them, but to all articles closely associated with his person." *Byrd*, 178 Wn.2d at 622. The folded foil was inside the cap and the record is insufficient to determine whether the search of the foil was a valid search of an article "closely associated with [Stephens's] person" at the time of or immediately preceding his arrest. *Byrd*, 178 Wn.2d at 622. Stephens's reliance on *Evans* is unpersuasive.

Stephens also relies on *Hamilton* to illustrate his point that the search of the cap and the search of the foil were separate warrantless searches because in *Hamilton*, we treated a search of a house and a search of a purse as distinct issues. In *Hamilton*, we held that Hamilton had an expectation of privacy in a purse, and counsel was ineffective for failing to move to suppress evidence found in the purse because no exception to the warrant requirement applied. 179 Wn. App. at 882-83, 888. *Hamilton* is distinguishable because there we were able to determine that the trial court likely would have suppressed the evidence if counsel had filed a motion to suppress. 179 Wn. App. at 888.

Stephens argues here that the search incident to arrest exception to the warrant requirement did not apply to the search of the foil because the foil was in the cap and "there was no issue with

loss or destruction of evidence or access to a weapon." Br. of Appellant at 21. However, here, we cannot determine from the record whether the suppression motion would have been successful. Stephens has failed to show on this record that the search incident to arrest exception did not apply to the search of the foil inside his cap and that the trial court likely would have granted a motion to suppress the evidence obtained from the search of the foil. Thus, he fails to show that he was prejudiced by his counsel's performance and this ineffective assistance of counsel claim fails.

### C. FAILURE TO RETAIN AN EXPERT

Next, Stephens argues that defense counsel acted deficiently by not retaining an expert to test the substance. He argues that there could have been another substance on the foil since the State's expert found only trace amounts of heroin. We hold that his argument fails.

A claim that trial counsel was ineffective does not survive if trial counsel's conduct can be characterized as legitimate trial strategy or tactics. *Grier*, 171 Wn.2d at 33. In general, the decision "to call a witness is a matter of legitimate trial tactics that presumptively does not support a claim of ineffective assistance of counsel." *State v. Davis*, 174 Wn. App. 623, 639, 300 P.3d 465 (2013). This presumption can be overcome if the defendant shows that counsel did not adequately investigate or prepare for trial. *Davis*, 174 Wn. App. at 639. On direct appeal, we cannot consider evidence outside of the record to support an ineffective assistance of counsel claim. *McFarland*, 127 Wn.2d at 335.

Again, Stephens relies on *State v. Hundley* to support his argument that trial counsel was ineffective for not hiring an expert to test the substance. 72 Wn. App. 746, 866 P.2d 56 (1994), *aff'd*, 126 Wn.2d 418. In *Hundley*, officers discovered a plastic bag in Hundley's wallet with indeterminate vegetable matter. 72 Wn. App. at 748. The State sent the substance to the crime

lab where testing revealed trace amounts of heroin and cocaine. *Hundley*, 72 Wn. App. at 748. Hundley also sent the material to an independent lab for testing and the tests came back negative for heroin and cocaine. *Hundley*, 72 Wn. App. at 748. We held that Hundley produced sufficient evidence of unwitting possession. *Hundley*, 72 Wn. App. at 753. The Supreme Court affirmed on different grounds, holding that due to the conflicting tests there was insufficient evidence to prove possession of a controlled substance beyond a reasonable doubt. *Hundley*, 126 Wn.2d at 421-22.

However, *Hundley* is distinguishable. Here, there were no conflicting lab tests and the substance twice tested positive for the presence of heroin. Nothing in the record shows that another test by a defense expert would have come back negative for heroin or shown the presence of another substance.

Stephens argues that defense counsel should have had the substance tested and there was no strategic reason not to retain an expert. He also states that even if the results were positive for heroin, he could have moved forward with his unwitting possession argument. However, here, nothing in the record reveals that the trial counsel's representation was deficient. The record does not show whether defense counsel retained an expert and decided not to call the expert at trial or what an expert would have revealed. Presuming counsel is effective, we assume counsel investigated and decided not to call an expert. Stephens makes no attempt to argue that his counsel failed to investigate or was unprepared for trial. Thus, nothing in the record shows that counsel was deficient.

Even assuming deficiency, Stephens fails to show the allegedly deficient performance was prejudicial. Even if an additional test showed the presence of RSO, that would not change the fact that the substance also twice tested positive for heroin. There is no reasonable probability that the failure to test for an additional substance would change the result of the proceeding here. *Grier*, 171 Wn.2d at 34. Further, although Stephens appears to claim that he was prejudiced by not being able to pursue an unwitting possession defense, the record shows he did argue an unwitting possession defense at trial. Thus, Stephens's argument fails.

III. APPELLATE COSTS

The State argues that if it prevails, it requests reasonable appellate costs pursuant to RAP 18.1(b), RAP 14.3, and former RCW 10.73.160 (2015). Exercising our discretion, we defer the determination of Stephens's current or future ability to pay appellate costs to a commissioner of this court in the event that the State files a cost bill and Stephens objects. RAP 14.2; *State v. Hendricks*, 4 Wn. App. 2d 135, 146 n.5, 420 P.3d 726 (2018).

CONCLUSION

In conclusion, the State presented sufficient evidence to convict Stephens of possession of a controlled substance. We also hold that Stephens' ineffective assistance of counsel claims fail.

15

No. 50868-1-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

WORSWICK, P.J.

MELNICK, J.